Amy Joseph Pedersen, OSB No. 853958
amy.joseph.pedersen@stoel.com
Andrea H. Thompson, OSB No. 084923
andrea.thompson@stoel.com
Dexter J. Pearce, OSB No. 164564
dexter.pearce@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

        Attorneys for Defendants

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| DR. RUPA BALA, | Case No.: 3:18-CV-00850-YY |
| Plaintiff, | DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD ON SUMMARY JUDGMENT |
| v. | |
| OREGON HEALTH AND SCIENCE UNIVERSITY, an Oregon public corporation; DR. CHARLES HENRIKSON, an individual; and DR. JOAQUIN CIGARROA, an individual, | |
| Defendants. | |

## I.  INTRODUCTION

Nearly two months after the parties fully briefed their cross-motions for summary

judgment, Plaintiff has moved to supplement the record by offering into evidence what is, in

essence, a compilation of irrelevant and unverifiable hearsay statements.  (ECF No. 40.)  At issue here is the Covington Report (the "Report"), published on December 9, 2021, which details findings from an independent assessment of OHSU's institutional culture conducted by the Washington, D.C.-based law firm Covington and Burling LLP ("Covington").

To be clear, Defendants do not challenge the Report's recommendations.  As Plaintiff points out, OHSU commissioned the work, has shared the Report's findings with the public, and is developing a plan to implement many of the Report's recommendations.  These actions, however, do not signify that the Report passes muster under the Federal Rules of Evidence ("FRE") or the standards set forth in Federal Rule of Civil Procedure ("FRCP") 56.  Nor do they indicate that the Report is relevant or admissible as evidence in this lawsuit.

None of the information contained in the Report is relevant or material to <u>any</u> of the issues in this case.  The Report does not conclude that any harassment or discrimination ever occurred at OHSU, nor does it find that OHSU has a discriminatory culture.  Instead, the Report identifies ways that OHSU can improve community perceptions with respect to its diversity, equity, and inclusion ("DEI") efforts and implement best practices for responding to a range of alleged misconduct.  The Report's findings are not probative of any aspect of Plaintiff's claims.

In her continued efforts to assail the general corporate character of OHSU, rather than to test the relevant decisionmakers or the specific facts of this case, Plaintiff seeks to offer evidence that is inadmissible under FRCP 56 and FRE 402, 403, 404, 602, and 702.  Any one of the numerous reasons explained below warrants the Court's denial of Plaintiff's motion to supplement the record.  Simply put, the Report has no place in this case.

## II.  BACKGROUND

The Report details findings from an evaluation of OHSU's culture.  The investigation assessed whether OHSU's current policies, procedures, and practices are designed to ensure that individuals are treated equitably, to prevent misconduct, and to ensure best practices when responding to employee complaints.  (Decl. of Matthew Ellis ("Ellis Decl.") Ex. 1 at 2.)  The review encompassed the "OHSU community" at large, which included employees, faculty, researchers, affiliated healthcare providers, medical residents, fellows, and other students—over 23,000 people in total.  (*Id.*)

As part of its assessment, Covington set up a hotline through which anyone within or outside of the OHSU community, could communicate directly with the Covington team to share experiences and perspectives related to OHSU's culture.  The reporting mechanism was to collect perceptions, not to investigate or verify the underlying reports.  The Report based its findings on (1) information collected from the unverified hotline reports, anonymous virtual focus groups, and interviews with current and former OHSU personnel; and (2) a review of existing documents, including records of past complaints of misconduct made by OHSU personnel, workplace engagement surveys previously commissioned by OHSU, and publicly available information.  (*Id.* at 7-10.)

The Report addresses a range of reported misconduct related to inequitable treatment, discrimination, harassment, bullying, or intimidation based on race, color, religion, national origin, disability, age, marital status, sex (including pregnancy), sexual orientation, gender, or gender identity or expression.  (*Id.*)

As noted in the Report, the Covington team did not attempt to verify, corroborate, or otherwise confirm the accuracy of any of the information they received from participants,

including any reports of misconduct.  In fact, most of the information is unverifiable as many

participants chose to remain anonymous, and the Covington team did not collect any identifying

information from those employees who participated in the focus group sessions.  (*Id.* at 8-9.)

### III.  ARGUMENT

This Court should deny Plaintiff's motion to supplement the record because the proffered

Report is inadmissible.

**A.     The Report Fails to Satisfy the Requirements of FRCP 56.**

It is well settled that only admissible evidence may be considered when ruling on a

motion for summary judgment.  *See Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir. 2002).  At

summary judgment, a party need not produce evidence in a form admissible at trial, so long as

the party satisfies the requirements of FRCP 56.  *See Block v. City of Los Angeles*, 253 F.3d 410,

418-21 (9th Cir. 2001).  FRCP 56(c)(4) requires that declarations used to support or oppose a

motion for summary judgment must be made on personal knowledge, set out facts that would be

admissible in evidence, and show that the declarant is competent to testify on the matters stated.

Plaintiff's proffered evidence fails to comply with FRCP 56's requirements.  Here,

Plaintiff has attached the Report to a declaration sworn by Plaintiff's *attorney*, and not by the

author or authors who prepared the Report.  The Ninth Circuit has cautioned that a declaration by

a plaintiff's counsel is likely insufficient to render admissible an unsworn report.  *Am. Fed'n of

Musicians of U.S. & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 977 (9th Cir. 2018)

(citing *Fowle v. C&C Cola, a Div. of ITT-Cont'l Baking Co.*, 868 F.2d 59, 67 (3d Cir. 1989)

(excluding unsworn expert report where plaintiff's attorney, and not the expert, had sworn the

declaration), and *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir.

2001) (excluding unsworn expert report where there was no indication that the expert had

attached a sworn declaration)).  At least one court in this district has found an unsworn expert's

report inadmissible for the same reasons.  *See World Fuel Servs., Inc. v. Martin*, No. 3:16-cv-

02303-MO, 2020 WL 6999224, at *2 (D. Or. Jan. 13, 2020).[1]  Because Plaintiff has failed to

satisfy FRCP 56's requirements, the Report is inadmissible and should be excluded.

**B.      The Report Cannot Be Offered in Any Admissible Form at Trial.**

The Court must also exclude the Report because it cannot be presented in an admissible

form at trial.  Under FRCP 56(c)(2), "[a] party may object that the material cited to support or

dispute a fact cannot be presented in a form that would be admissible in evidence."  Under FRCP

56, a court must exclude evidence if it is clear that it cannot be presented in any admissible form

at trial.  *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657 F.3d 936, 964

(9th Cir. 2011).

Plaintiff does not identify in her motion how she plans to introduce the Report into

evidence.  This is likely because a foundation cannot be laid because much of the data and

information relied upon is completely unverifiable.  To the extent Plaintiff intends to admit the

Report through expert testimony, the Report is not admissible under FRE 702 because it is not

the product of methods or opinions that have been applied to the facts of this case and, as

explained in further detail in Part I.D *infra*, it will not help a jury understand the evidence or

determine a fact at issue in this case.  Plaintiff cannot correct for this problem now and she will

be unable to at trial.  Therefore, the Report must be excluded.

---

[1] While the Court in *Martin* found that "an unsworn report that otherwise meets the requirements of FRCP 56—personal knowledge, admissible in evidence, and a competent affiant—may be admissible on the discretion of the court," as explained in detail below, the Report fails to meet any of FRCP 56's standards and it is therefore inadmissible.  2020 WL 6999224, at *2.

**C.**     **The Report Is Irrelevant and Inadmissible Under FRE 402 and 403.**

   **1.**     **The Report Is Not Probative of Whether OHSU Has a Discriminatory Culture.**

In her opposition brief, Plaintiff argued that circumstantial evidence of a discriminatory atmosphere at a plaintiff's place of employment or a discriminatory "corporate state of mind" is relevant to motive in an individual discrimination case.  (Pl.'s Opp'n at 31-33.)  Plaintiff seeks to admit the Report as evidence of pretext to support her argument that OHSU had a "discriminatory atmosphere" and a "discriminatory culture" when she worked there.  (Pl.'s Mot. at 2; Pl.'s Opp. to Defs.' Mot. Summ. J. at 29-31.)

The three cases Plaintiff cited in her opposition do not help her here, as they all involve evidence that differs dramatically from the type of evidence Plaintiff seeks to admit.  For example, in *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987), the First Circuit held that, in the female plaintiff's sex discrimination case, sexist statements made by two male supervisory employees were probative of the fact that the plaintiff's employer fostered an atmosphere of discrimination that affected its personnel decisions.  Similarly, in *Risch v. Royal Oak Police Department*, 581 F.3d 383, 393 (6th Cir. 2009), the Sixth Circuit found that, in the plaintiff police officer's gender discrimination case for failure to promote, sexist remarks made by male police Sergeants and members of the command staff about their female colleagues, including statements expressing the view that female officers would never be promoted to command positions, were probative of a discriminatory atmosphere in the department and admissible to establish pretext.  And in *Margolis v. Tektronix, Inc.*, 44 F. App'x 138, 141-42 (9th Cir. 2002), the court found that comments made to the plaintiff by her direct supervisor that others considered her "pushy" and "aggressive" were probative of a discriminatory atmosphere to support the plaintiff's gender discrimination claim.

All three cases involve evidence of sexist remarks made by men in managerial positions to support gender discrimination claims asserted by female plaintiffs.  Contrary to Plaintiff's assertions, they do not stand for the proposition that unverified and unverifiable reports by a small percentage of employees, untethered to the plaintiff's circumstances or her theory of the case, establish a discriminatory corporate atmosphere.  In other words, the witnesses in those cases, unlike the contents of the Report here, had something relevant to say.  Plaintiff has made no comparable showing.  These cases demonstrate that the evidence offered to demonstrate a discriminatory culture sufficient to satisfy the pretext component must have some connection to the plaintiff's claims, or at least to the alleged bad actors.  Here, there is absolutely no connection between the Report and the unverifiable allegations it contains and Plaintiff's claims.

Further, and perhaps most importantly, the Report itself does not find that discrimination or harassment actually occurred at OHSU, nor does it specifically describe any instances of discrimination or harassment.  Rather, the Report identifies certain deficiencies with respect to OHSU's DEI efforts and its policies and procedures for addressing and responding to reports of misconduct, and provides recommendations for strengthening its policies and creating a more diverse, equitable, and inclusive workplace.  (Ellis Decl. Ex. 1 at 3-4.)  Such findings are not probative of an institution-wide culture of discrimination.

Moreover, the pool of current and former anonymous employees and other community members relied upon in the cultural assessment is not the relevant one on which to assess discriminatory motive.  The Ninth Circuit has stated that the "impact of a practice on [a] protected class should generally be measured against the actual pool of employees affected by that practice." *Sengupta v. Morrison-Knudsen Co.*, 804 F.2d 1072, 1075-76 (9th Cir. 1986).  The Report relies in large part on self-reported information from anonymous individuals of different

races, ages, genders, and other protected classes (or no protected class), serving in a wide range

of positions and departments across OHSU.  Significantly, the Report does not specify whether

any of the employees or others who provided information to Covington's team were Asian

females, let alone whether the reporters were Asian female doctors who had complained of

gender and/or race and sex bias discrimination.

Finally, the statistical information that is contained in the Report is too small to constitute

"substantial and specific" evidence that Defendants' reasons for terminating Plaintiff are

pretextual.  *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1209 (9th Cir. 2008); *see also*

*Sengupta*, 804 F.2d at 1075 (declining to consider evidence from four or five employees in a

pool of 28 employees and noting that "statistical evidence derived from an extremely small

universe . . . has little predictive value and must be disregarded" (quotation simplified)).  Only

3.6% of OHSU's current workforce participated in Covington's anonymous focus groups, and

only 2% of its current workforce was interviewed.  Moreover, only 20% of that tiny 2% was

human resources professionals, AAEO investigators, and members of the executive leadership

team.  (Ellis Decl. Ex. 1 at 7-8.)  Given the unrepresentative and minuscule sample size, the

Report cannot support an inference in this legal proceeding that OHSU has a discriminatory

culture from which pretext can be established.[2]

Courts have recognized that "although evidence of a discriminatory culture may be

helpful to raise an inference of discrimination at the first step of the *McDonnell-Douglas*

framework, it is likely not relevant to [a] [p]laintiff's burden to show pretext."  *Wilson-Phillips v.*

---

[2] The fact that OHSU has chosen to take action based on the Report does not mean that it
accepts that the Report is admissible evidence of a discriminatory culture relevant to Plaintiff's
claims any more than an employer's desire to increase the diversity of its workforce is
admissible evidence that its current workforce is all white.

Page  8   -   DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
                     SUPPLEMENT THE RECORD ON SUMMARY JUDGMENT

*MTA*, No. 18-CV-417, 2018 WL 5981736, at *3 n.2 (S.D.N.Y. Nov. 14, 2018) (noting that "once Defendants proffer nondiscriminatory reasons for their [employment] decisions, it is unclear how evidence of a more nebulous 'culture' of discrimination will be relevant to showing that Defendants' reasons are pretextual"); *see, e.g.*, *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 93-94 (2d Cir. 2001) (holding that an executive's statements about "changing the corporate culture" in favor of younger employees established a prima facie case of age discrimination, but was insufficient to satisfy plaintiff's burden of showing pretext). For all of these reasons, the Report is not probative in pretext in this case.

### 2. Employees' Generalized Perceptions Are Not Relevant or Admissible to Establish Pretext.

The Ninth Circuit has made clear that an employee's subjective feelings and perceptions do not qualify as evidence of pretext. *See Mageno v. Penske Truck Leasing, Inc.*, 213 F.3d 642, 2000 WL 300977, at *2 (9th Cir. Mar. 22, 2000) (unpublished) ("'[S]peculation cannot be regarded as substantial responsive evidence' of pretext sufficient to defeat summary judgment." (citation omitted)); *Schuler v. Chronicle Broad. Co.*, 793 F.2d 1010, 1011 (9th Cir. 1986) (employee's statements that she "felt" competent do not qualify as evidence of pretext); *see also Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir. 1980) (discrimination plaintiff's "perception of himself . . . is not relevant").

Here, Plaintiff seeks to offer as evidence a small percentage of OHSU community members' beliefs and perceptions of OHSU. These beliefs do not constitute evidence of discrimination, but rather reflect only speculation that unfair treatment has occurred. Indeed, the "institutional challenges" identified in the Report are all based on faculty and employee perceptions:

1. OHSU has failed to create an environment which *community members feel* values diversity, equity, and inclusion ("DEI") and *makes them feel* welcome and safe.
2. Community members *report differing experiences* at OHSU based on protected characteristics, status, or position within the institution.
3. Community members *perceive* significant risks and few benefits from reporting misconduct.
4. Community members *believe* that OHSU does not hold people equally accountable for misconduct.
5. Community members *perceive* that OHSU tends to view reports of misconduct with skepticism and doubt.

(Ellis Decl. Ex. 1 at 5 (emphasis added).)  Such beliefs, unsupported by factual evidence, are irrelevant and must be excluded.  *See Cervantes v. Concentra Health Servs., Inc.*, No. 2-21-cv-02502-SB, 2021 WL 6496829, at *6 (C.D. Cal. Dec. 21, 2021) (plaintiff's repeated statements that she "felt discriminated against" do not raise a genuine issue of material fact as to pretext (quotation simplified)); *Holifield v. Reno*, 115 F.3d 1555, 1563 (11th Cir. 1997) (finding "the perception of other[s] . . . that racism [wa]s present at the institution" inadmissible because none of the witnesses "spoke of incidents of discrimination concerning [the plaintiff]" and instead "stated that it was their impression that discrimination existed at [the institution]").

### 3.    The Report Is Not Relevant to Plaintiff's Claims or the Facts in This Case.

Finally, the Report bears no relationship to Plaintiff's claims here.  It is not probative of whether Plaintiff was singled out based on her gender and/or race, nor does it shed light on the motivations of those who acted for OHSU in choosing to not renew Plaintiff's contract.  Indeed, it is unknown (and likely unknowable) whether any of the employees participating in the survey were female doctors, or whether any of the participants alleged that they were treated differently than their male peers because of their race or gender.  At best, the evidence shows that OHSU's record of handling complaints of misconduct had "bruise[s]" in departments far removed from

Plaintiff's own, not that OHSU was "rotten to the core."  *Cooper v. Fed. Rsrv. Bank of Richmond*, 467 U.S. 867, 880 (1984).

For all of these reasons, the Report is not relevant in determining whether OHSU's proffered reasons for nonrenewal of her contract were pretextual and must be excluded.

### 4. The Report Is Not Relevant to Support Plaintiff's "Sex Stereotyping" Theory.

Plaintiff also claims that the Report and OHSU's statements about it on its website "would have been offered in conjunction with the opinions of both of Plaintiff's Experts, Dr. Carnes and Dr. Glick" and place at issue OHSU's motive to discriminate.  (Pl.'s Mot. at 2.)  Both Dr. Carnes and Dr. Glick opined that the complaints about Plaintiff and OHSU's actions in response to those complaints are consistent with sex stereotyping.  (Glick Decl. ¶ 6; Carnes Decl. ¶¶ 5-6.)

For all of the reasons asserted in Part III.A-C, *supra*, the Report is also not relevant to proving sex stereotyping or implicit bias.  Indeed, these concepts are not referred to anywhere in the Report.  The Report is devoid of any admissible evidence that women were treated less favorably than similarly situated men, or that Defendants' reason for allegedly doing so were based on sex stereotypes.  Nor is the Report at all similar to Plaintiff's proffered testimony by Dr. Carnes and Dr. Glick, as it does not link any of its data or findings to evidence in the record or to facts in Plaintiff's case.

### 5. The Report Should Be Excluded Under FRE 403.

Not only is the Report irrelevant, but any probative value it might have is outweighed by the danger that it will unfairly prejudice OHSU.  The Report's findings will confuse and mislead the jury because it will distract them from the essential question of determining whether OHSU acted with discriminatory intent regarding its decisions involving Plaintiff's employment.  That

is the only question the jury should consider, unsullied by any insinuation that the fact that

OHSU has taken the laudable action to evaluate its own processes and procedures is an

admission that its people discriminated against Plaintiff because of her gender or race or in

retaliation for her having made complaints.

**D.      The Report Must Be Excluded as Inadmissible Hearsay.**

In addition to being irrelevant to any of the issues in this case, it is also inadmissible

hearsay and must be excluded.  Hearsay is inadmissible unless it is defined as non-hearsay or if it

qualifies as an exception to the general hearsay rule.  When a statement is hearsay within

hearsay, each statement must also qualify under some exemption or exception to the hearsay

rule.  FRE 805; *United States v. Arteaga*, 117 F.3d 388, 396 n.12 (9th Cir. 1997).

Here, the Report itself is a written document prepared out of court and is therefore

hearsay.  *See* FRE 801(a), (c).  In addition, the statements made by OHSU employees included

within the Report are hearsay within hearsay.  Moreover, to the extent the Report reflects issues

raised by anonymous reporters about things that they had heard about from others, it contains

three or more levels of hearsay.  The Report is being offered for the truth of the proposition that

OHSU has a discriminatory culture sufficient to establish pretext.  Thus, all of the evidence

Plaintiff seeks to admit is subject to exclusion unless an exception to the hearsay rule applies to

each hearsay statement.

Plaintiff has not identified an applicable exception to the hearsay rule for the Report or

the statements contained in it.  To the extent that Plaintiff offers the Report to establish OHSU's

discriminatory motive under FRE 803(3), this inference depends on the truth of employee

statements regarding reports of misconduct and their experiences of alleged differential treatment

at OHSU.  Thus, the Report and its contents are offered for the truth of the matter stated and are

Page  12  -    DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
                        SUPPLEMENT THE RECORD ON SUMMARY JUDGMENT

still hearsay.  Because there is no other applicable hearsay exception, the Report is inadmissible

and must be excluded from evidence.

**E.      "Other Bad Acts" Evidence Contained in the Report Is Inadmissible Character Evidence.**

The Report is also inadmissible under FRE 404.  Evidence of other bad acts is

inadmissible "to prove a person's character in order to show that on a particular occasion the

person acted in accordance with the character."  FRE 404(b)(1).  Though evidence of that nature

may be offered for a non-propensity purpose such as motive or intent, Plaintiff must establish

first that the alleged act or acts occurred, and that the acts themselves are similar to the acts

alleged by Plaintiff.  *See Duran v. Maywood*, 221 F.3d 1127, 1132 (9th Cir. 2000).  Plaintiff

cannot meet either burden.

First, as discussed above, the Report did not verify the accuracy of any of the reports of

misconduct made by former and current employees.  Most of these reports cannot be verified as

the Report's authors did not collect any identifying information on the focus group participants

and many other employees chose to remain anonymous.  It is simply impossible for Plaintiff to

prove that any of the alleged acts occurred.

Second, the other acts involve a broad range of misconduct alleged by the "OHSU

community" at large made by a diverse group of employees, students, and faculty—not just

reports of gender discrimination and sex/race discrimination by Asian female doctors.  In fact,

only eight of the 299 hotline callers (again, from a pool of about 23,000) made reports that they

had experienced gender discrimination at OHSU.  (Ellis Decl. Ex. 2 at 21.)  Plaintiff cannot show

that the alleged "bad acts" referenced in the Report involve conduct like the conduct alleged by

Plaintiff in this lawsuit.

Page  13  -    DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
                        SUPPLEMENT THE RECORD ON SUMMARY JUDGMENT

Where, as here, the proffered evidence does not have the requisite link to the

decisionmakers, courts of appeal properly have excluded it under FRE 404. *E.g., Kline v. City of*

*Kansas City,* 175 F.3d 660, 668 (8th Cir. 1999) ("We agree with the trial court that the acts of

people who did not supervise or allegedly discriminate against the plaintiffs (and who in most

cases did not even work in the same area as the plaintiffs) are not probative of the city's motive,

opportunity, intent, or knowledge."); *Becker v. ARCO Chem. Co.*, 207 F.3d 176, 182, 185 (3d

Cir. 2000) (holding that it was reversible error to admit evidence about the employment

circumstances of others because different decisionmakers were at issue and the proffered

evidence was not probative of any "plan" by ARCO as a whole because there was no showing of

nexus to the plaintiff).

The other bad acts evidence is also inadmissible under FRE 403. Courts routinely hold

that evidence of other bad acts similar to the evidence Plaintiff seeks to offer here is unduly

prejudicial, requires mini-trials, and is misleading to the jury and is therefore inadmissible. *See,*

*e.g.*, *Hodge v. Mayer Unified Sch. Dist. No. 43 Governing Bd.*, No. 05-1557, 2007 WL 1112954,

at *1 (9th Cir. Apr. 13, 2007). This evidence should be excluded under FRE 403 because

Defendants will be compelled to conduct "mini-trials" on allegations on which there has not

been, and cannot be, any discovery. The evidence is not probative of any of the issues in this

case and creates a significant danger of confusing the jury and prejudicing Defendants.

///

///

///

Page  14  -   DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO
              SUPPLEMENT THE RECORD ON SUMMARY JUDGMENT

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiff's

motion to supplement the record.

DATED:  January 21, 2022.

STOEL RIVES LLP


_s/ Amy Joseph Pedersen_
AMY JOSEPH PEDERSEN, OSB No. 853958
amy.joseph.pedersen@stoel.com
ANDREA H. THOMPSON, OSB No. 084923
andrea.thompson@stoel.com
DEXTER J. PEARCE, OSB No. 164564
dexter.pearce@stoel.com
Telephone:  503.224.3380

Attorneys for Defendants