**MATTHEW C. ELLIS, OSB No. 075800**
matthew@employmentlawpdx.com
**Matthew C. Ellis, PC**
1500 SW 1st Avenue, Suite 1000
Portland, Oregon 97201
Telephone: 503/345-5407

**STEPHEN L. BRISCHETTO, OSB No. 781564**
slb@brischettolaw.com
1500 SW 1st Avenue, Suite 1000
Portland, Oregon 97201
Telephone:  503 223-5814

Of Attorneys for Plaintiff

### UNITED STATES DISTRICT COURT

### DISTRICT OF OREGON

| | |
|---|---|
| **DR. RUPA BALA**,<br><br>              Plaintiff,<br><br>    v.<br><br>**OREGON HEALTH AND SCIENCE UNIVERSITY, an Oregon public corporation; DR. CHARLES HENRIKSON, an individual; DR. JOAQUIN CIGARROA, an individual.**<br><br>              Defendants. | **CASE NO. 3:18-CV-00850-HZ**<br><br>**PLAINTIFF'S TRIAL MEMORANDUM** |

Plaintiff's Trial Memorandum discusses the legal issues the Court should address at trial.

**I.      ISSUES TRIED TO COURT OR TO THE JURY.** Plaintiff's economic damages claims for back pay, front pay impairment to earning capacity and her non-economic damages claims should be tried to the jury.

Plaintiff's economic and non-economic damages claims against the individual defendants for race and sex discrimination under 42 USC §1983 are tort claims tried to the jury. *Carey v Piphus*, 435 US 247, 253 - 254 (1978) (§1983 created species of tort liability); *Memphis County*

**Page 1 – PLAINTIFF'S TRIAL MEMORANDUM**

*School District v Stachura,* 477 US 299, 306 (1986) (stating §1983 damage claims are tort claims for compensatory damages).

Plaintiff's economic and non-economic damages claims against OHSU for race and sex discrimination are brought under ORS 659A.885(1) and ORS 659A.885(3)(a)[1]. Plaintiff's economic and non-economic damage claims based upon retaliation for her complaints regarding substandard patient care are brought for violations of ORS 441.044(2)[2] and ORS 659A.199. ORS 411.044(5) provides a "right of action for damages" for any person "suffering loss or damage" as a result of a violation of ORS 441.044(2). ORS 659A.885(3)(a) authorizes an award of compensatory damages for violations of ORS 659A.199.

For claims brought under ORS 659A.885(3)(a), Oregon law authorizes a plaintiff to seek an award of compensatory damages determined by a jury. ORS 659A.885(3)(a)("at the request of any party, *the action* shall be tried to a jury." (Emphasis added). Here, Plaintiff has requested a jury trial on her compensatory damage claims under state law. Thus, Plaintiff is entitled to a jury trial on compensatory damages on all state law claims.

Under Oregon law, compensatory damages include all losses sustained by the injured party. See, *Tadsen v Praegitzer Indus.*, 322 Or 465, 470 (1996)(holding compensatory damages under former ORS 659.121(2) are damages that will compensate injured party for all losses sustained including front pay). Plaintiff is entitled to a jury trial in an action where she seeks compensatory damages. *Wooton v Viking Distrib. Co.*, 136 Or App 56, 62 (1995)(holding that legal and equitable claims for relief under former ORS 659.121(2) are tried to the jury); see also, *Bednarz v Bay Area*

---

[1] Under ORS 659A.885(2) claims for violation of ORS 659A.030 and 659A.199 may be brought under ORS 659A.885(1). Under ORS 659A.885(3)(a)("the court may award, in addition to the relief authorized under subsection (1) ... compensatory damages) for, *inter alia*, violations of ORS 659A.030 and ORS 659A.199.
[2] The Second Amended Complaint asserts a claim for violation of ORS 441.057(2). Second Amended Complaint ¶54. ORS 441.057 was renumbered ORS 441.044 in 2018.

Page 2 – PLAINTIFF'S TRIAL MEMORANDUM

*Motors, Inc.*, 95 Or App 159, 162 (1989). Under *Tadsen*, *Wooton* and *Bednarz*, Plaintiff is entitled to a jury trial on claims for economic damages (including back and frontpay) and non-economic damages as compensatory damages under ORS 659A.885(2) and (3)(a).

Under current law, Plaintiff's Title VII claims for back pay and front pay are likely tried to the Court. See, *Traxler v Multnomah County,* 596 F3d 1007, 1014 (9th Cir 2010) and *Lutz v Glendale Union High School,* 403 F3d 1061, 1069 (9th Cir 2005). Plaintiff's Title VII claims for compensatory damages are tried to the jury. 42 USC §1981a(c)(1).

Plaintiff's sex discrimination claims under Title IX of the Education Amendments is likely a claim for economic damages similar to a suit for breach of contract. See, *Cummings v Premier Rehab Keller*, PLLC, 142 S. Ct. 1562, 1576 (2022). Since breach of contract actions are normally subject to a jury trial, Plaintiff's Title IX claim for economic damages for sex discrimination is also subject to a jury trial. *Molodyh v Truck Ins. Exchange*, 304 Or 290, 296 (1987)(right to jury trial under Oregon Constitution for claims of breach of contract).

In this case, there are common questions of fact between the Federal and State law tort claims for economic damages and the Title VII claims for back pay and front pay. Where common issues of fact are tried to the jury, the trial court must follow the jury's implicit or explicit factual determinations in deciding equitable claims. The Seventh Amendment prohibits the trial court from re-examining issues tried by a jury except as permitted under the narrow modes known to the common law. *Tuetscher v Woodson*, 833 F3d 936 (9th Cir 2016). Thus, if the Jury finds Defendants liable on any claim for economic damages, the trial court will be bound to apply the economic damages determination to the Court's determinations of back pay and front pay under Title VII.

**II.     CLAIMS FOR RELIEF.** Plaintiff's claims remaining in the case are: §1983 claims for race and sex discrimination (Claim One); state law retaliation claims for good faith reports of

inappropriate and substandard medical care (Claims Three and Four); state law race and sex discrimination claims (Claim Five); Title IX sex discrimination claims (Claim Six); and Title VII race and sex discrimination claims (Claim Seven).[3]  With respect to these six claims, the Court decided at summary judgment Plaintiff's evidence established a material issue of fact as to a *prima facie* case and as to pretext. Plaintiff's evidence at trial will be no different than Plaintiff's evidence at summary judgment.  As a result, Plaintiff will be entitled to take all six claims to the jury.  See, *Anderson v Liberty Lobby, Inc.*, 477 US 242, 250 (1986)(holding the standard for summary judgment "mirrors" the standard for directed verdict)

    **1.**    **Sex and Race Stereotyping.** Plaintiff's evidence at trial will be that she was subjected to sex and race stereotyping; and, that racial and ethnic stereotyping were linked to Defendants' retaliation against Plaintiff for raising issues regarding substandard patient care.

    It is well settled that an employer who relies upon sex stereotypical complaints in making promotion decisions discriminates on the basis of gender. *Price Waterhouse v. Hopkins*, 490 U.S. 228, 251, 256 (1989).  The *Price Waterhouse* holding is not limited to promotion decisions.  Rather, evidence any adverse employment decision was made in part due to a sex stereotype establishes a prima *facie case* of discrimination. *Jespersen v. Harrah's Operating Co.*, 444 F.3d 1104, 1109-10 (9th Cir. 2006).  Ninth Circuit law requires courts to scrutinize language hinting at sex stereotyping based on women's failure to assume a submissive role.  *Stegall v. Citadel Broad. Co.*, 350 F.3d 1061, 1072 (9th Cir. 2003).  Complaints an assertive, strong female is "difficult" has a "negative attitude" is "not a team player" and is "problematic" are terms scrutinized for sex stereotypes.  *Stegall, supra*, 350 F.3d at 1072.  In Plaintiff's view, the

---

[3] This Court dismissed Plaintiff's §1981 claim for race discrimination.  Dkt#194. Magistrate You dismissed at summary judgment Plaintiff's claim based upon retaliation for opposing sex and race discrimination; and her claim for retaliation for reporting substandard care.  This Court overruled the Magistrate's decision regarding the retaliation claim for reporting substandard care.  Dkt #159 at 2, 3.

**Page 4 – PLAINTIFF'S TRIAL MEMORANDUM**

evidence will be undisputed at trial that all of defendants' reasons for each adverse employment decision were due to Plaintiff's alleged communication style and all such complaint are consistent with stereotyping.

Plaintiff will present testimony from Dr. Peter Glick, a Ph.D. in social psychology and Dr. Molly Carnes a physician, scientist and retired professor who will demonstrate how OHSU relied upon sex and race stereotypes in making employment decisions.

Dr. Glick will testify concerning the science of social framework analysis. He will testify that discrimination and prejudice are complex processes that depend on both the situational context and organizational context. Exhibit 185[4] at 13. Here, Plaintiff will offer evidence that Dr. Bala was employed in a male-dominated field (electro-physiology) and an OHSU section that consisted of all male physicians. Exhibit 185 at 53. Plaintiff's evidence will establish that OHSU has an organizational culture where a survey of the faculty, statements of the Vice Provost, and statements of the OHSU President establish an organizational climate of discrimination. *Id.*; see also, Exhibit 185 at 77 – 79 (leadership minimizing complaints of discrimination consistent with stereotype motivated bias and discrimination).

Dr. Glick will discuss the scientific literature regarding 'backlash' against women. He will testify that women who work in predominantly masculine domains face 'gender prescriptions' regarding their behaviors. Women violating gender prescriptions face social and workplace penalties for doing so. Among the behaviors that prompt backlash includes self-promotion, criticizing others, showing anger, an assertive style and even succeeding in a male-

---

[4] All exhibits cited herein are citations to Plaintiff's trial exhibits listed on Plaintiff's Exhibit List.

**Page 5 – PLAINTIFF'S TRIAL MEMORANDUM**

dominated environment. Exhibit 185 at 29. Dr. Glick will testify that women as well as men engaged in backlash against assertive women. Exhibit 185 at 31.

Dr. Carnes will testify concerning scientific literature establishing that gender prescriptions and backlash against women are well-documented in studies of academic and medical settings. She will testify women in leadership roles in predominantly male fields face 'gender policing,' in medicine i.e., negative evaluations for identical behaviors that go unnoticed or receive praise in men for effective leadership. Exhibit 186 at 6-7. She will testify regarding the scientific literature establishing Plaintiff's status as an Asian woman of color made her particularly vulnerable to discrimination based on cultural stereotypes. Exhibit 186 at 10-11.

Plaintiff's evidence regarding the social and medical establishes a connection between the discrimination claims and the retaliation claims. Plaintiff's evidence will establish that the majority of all of what defendants call 'complaints' about Plaintiff arise from incidents where Plaintiff addressed deficiencies in patient care or put in place standards and protocols through the proper mechanism to address deficiencies in patient care. There will be evidence that Plaintiff made changes in the cath lab (Exhibit 15), changes in the protocols for sheaths (Exhibit 16 and 17), raised concerns over an anesthesia nurse giving in incorrect dosage of medicine, nurses not understanding what was transpiring in the operating room, nurses inadequate knowledge base, lab staff members being unprofessional about extending a case to provide good patient care (Exhibit 21); raised concerns regarding not having cardiac anesthesia present for a procedure as requested (Exhibit 55), raising a mistake made by a nurse in the operating room (Exhibit 93), telling a visiting technician to stop talking during a procedure (113). Plaintiff will establish she was repeatedly described in sex stereotypical terms both by staff and by the individual defendants because of her efforts.

**Page 6 – PLAINTIFF'S TRIAL MEMORANDUM**

Plaintiff's evidence of sex stereotyping also addresses one of Defendants' objections to Plaintiff's contentions. Defendants have objected to Plaintiff using the word 'retaliation' among Plaintiff's contentions in the Section 1983 discrimination claims. See, Joint Pretrial Order at 35. In Plaintiff's view the use of the word 'retaliation' among Plaintiff's contentions supporting the Section 1983 is appropriate. Plaintiff's evidence establishes Defendants actions in retaliating against Plaintiff for raising concerns regarding substandard care was motivated by sex and race-based stereotypes, namely, backlash against a women of color for violating gender prescriptions.

## III.  RELIEF

Plaintiff seeks economic and non-economic damages as set forth in her Itemized Statement of Damages. The legal bases for the damage requests are detailed below.

**1. Lost Wages and Benefits and Lost Future Wages.** Plaintiff seeks economic damages for lost wages and benefits/ back pay and benefits. Plaintiff's wage loss is measured by the difference between what Plaintiff would have earned in the absence of the unlawful conduct less amounts earned through other employment. Upon establishing liability, Claimant's burden of proof on damages is to establish economic loss. This can be done through evidence of the existence and amount of loss and a causal link to Respondent's conduct. See, e.g., *Goff v USA Truck, Inc.,* 929 F2d 429, 430 (8th Cir 1991). Upon submission of evidence of economic loss, Claimant's damages are established. Thereafter, Respondent bears the burden of proving the award should not be made. *Fadhl v City and County of Los Angeles*, 741 F2d 1163, 1167 (9th Cir 1984). Plaintiff also seeks economic damages for lost future wages and benefits/ front pay. In the Ninth Circuit, an award of front pay/lost future wages and benefits may be made upon a showing of antagonism between the parties or the unavailability of a position. *Cassino v Reichhold Chemicals, Inc*., 817 F2d 1336 1347 (9th Cir 1987)( "some hostility" between parties

**Page 7 – PLAINTIFF'S TRIAL MEMORANDUM**

is enough even if the plaintiff and defendant remain "friends."). Front pay may be awarded when antagonism or the lack of a position makes reinstatement unavailable following trial. *Thorne v City of El Segundo*, 802 F2d 1131, 1137 (9th Cir 1986).

Here, there should be no question that an award of lost future wages/front pay, rather than reinstatement, is the appropriate remedy. Plaintiff will present evidence the Cardiology Chief, Dr. Kaul, told her Dr. Henrikson gave an ultimatum to terminate Dr. Bala or Dr. Henrikson would step down as EP Chief; and that the Chief elected to retain Henrikson and place Dr. Bala on a terminal contract. This evidence alone should be sufficient for to establish reinstatement is not feasible. Plaintiff also has evidence that she made multiple complaints of discrimination to leaders in OHSU who took no action to investigate or remedy her complaints in violation of OHSU policies; that OHSU is an entity which continues to have significant harassment and discrimination occurring in its work force; and, that both Dr. Cigarroa, Dr. Henrikson and others at OHSU gave derogatory references about her after her departure.

To support her claims for economic damages, Plaintiff will submit 3 damage scenarios for presentation to the jury based upon a determination by the jury whether, but for the discrimination she faced at OHSU, she would have been promoted to full Professor and Chief of a Department at OHSU. All three scenarios evaluate Plaintiff's damages through her retirement.

To support her claim for wage loss in the Professor and Chief positions at OHSU, Plaintiff will offer testimony that Dr. Bala came to OHSU after attending medical school at Georgetown University, obtaining a competitively selected internal medicine residency at the University of Chicago, a cardiology fellowship at the University of Pennsylvania, and additional training in electro-physiology at Pennsylvania. The evidence will be that Dr. Bala's background was at some of the highest rated programs in the nation. Dr. Bala maintained career goals of

**Page 8 – PLAINTIFF'S TRIAL MEMORANDUM**

STEPHEN L. BRISCHETTO
621 SW Morrison St, Suite 1025
Portland, Oregon 97205
Telephone: (503) 223-5814

securing positions as a full Professor, the Chair of a Department and perhaps even higher-level positions in an academic medicine college. There will be evidence of the career paths of Professors and Chiefs in other prominent academic programs and the time they needed to achieve these goals.

Defendant may argue that Plaintiff cannot recover for promotions lost as a part of damages in a claim based upon a discriminatory termination, but Ninth Circuit case law is to the contrary. In *Gotthardt v AMTRAK*, 191 F3d 1148, 1156 (9th Cir 1999), the Ninth Circuit held that a female engineer, disabled because of a hostile work environment, could recover for the damage to her projected career path as a part of a back pay/front pay award tried to a jury. In *Gotthardt*, the Ninth Circuit awarded damages based upon evidence that Gotthardt would have obtained a promotion and continued to work in the promoted position but for discrimination. The Ninth Circuit upheld the award based upon evidence that Gotthardt possessed the skills and abilities to obtain the promotion. See also, *Passantino v Johnson and Johnson*, 212 F3d 493, 511 (9th Cir 2000)(affirming verdict including compensation for lost future promotions in both back pay and front pay awards based upon evidence the plaintiff was qualified for positions and those positions were available).

Here, Plaintiff's qualifications from her education and training at the University of Chicago; Defendants actions and statements in recruiting Plaintiff for the position of Director of Ablation at OHSU, OHSU's promotion of Plaintiff from Associate Professor, provisional status, to Associate Professor; and the availability of both Professor and Chief positions at OHSU establish evidence sufficient for a jury finding that Plaintiff would have been promoted to both positions but for discrimination and retaliation.

**Page 9 – PLAINTIFF'S TRIAL MEMORANDUM**

**2. Plaintiff Claims For Impaired Earning Capacity.** Plaintiff's complaint asserts claims for lost earning capacity. If the jury does not compensate Plaintiff for promotion to full professor, promotion to Chief or for her lost future wages in private practice through her retirement, Plaintiff maintains a claim for futures damages as impaired earning capacity.

Plaintiff's evidence will be that her ability to positions in academic medicine is gone eliminating her career as a Professor in research hospital, a Chief of a Cardiology Department and potentially higher leadership positions in an academic medicine. Plaintiff's evidence will be that leaders in academic research and teaching hospitals have the potential to move into highly lucrative private practice settings and that her career path in private practice is also impaired.

Plaintiff will offer expert testimony from a vocational counselor, Lisa Broten, to establish the impairment of her earning capacity both in the academic and private practice settings. Ms. Broten based her opinion upon published guidelines as to what Professors and Chiefs in academic medical institutions; and as to what Electrophysiologists in private practice earn. The testimony will be that OHSU and academic hospitals across the nation employ the same standards to determine Professor's and Chief's pay. Similarly, Ms. Broten based her opinion regarding earning capacity in private practice on guidelines used to establish physician's pay in the private sector. Evidence regarding a plaintiff's projected earnings in a position is evidence that supports an award for lost earning capacity. *Groth v Hyundai Precision & Ind. Co*., 209 Or App 781, 797-798 (2006).

In addition to expert testimony, Plaintiff's evidence will be that the Electrophysiology community is a very small community nationwide and is predominantly male. Plaintiff will introduce evidence that the non-renewal of an academic hospital contract, alone, can damage an individual's earning capacity within the EP community. Plaintiff will introduce evidence that

Dr. Cigarroa, Dr. Henrikson and OHSU have circulated negative statements and inferences in the EP community after her departure; that Dr. Bala has submitted in excess of 200 employment inquiries and repeatedly been denied employment; that she has endured prolonged periods of unemployment which should not occur for someone of her skills and abilities; that recruiters have mentioned uninvited newspaper coverage of OHSU's termination of her contract as a factor in her ability to obtain employment; that she has been unable to obtain comparable employment in academic medicine; that Professors or Chiefs in academic positions have the capacity to obtain highly desirable positions in private practice and, that she has been significantly under-employed in private practice in 3 positions not substantially equivalent to her position at OHSU.

Plaintiff's evidence is sufficient to establish impaired earning capacity under state law. Oregon recognizes that the impairment of a person's earning capacity is an injury distinct from loss of earnings. Thus, a plaintiff is not required to prove plaintiff worked in a profession in the past or intended to do so in the future to obtain compensation for a loss of earning capacity. *Richmond v Zimbrick Logging*, 124 Or App 631, 634 (1993). Upon evidence of diminished work capacity, the issue of impaired earning capacity is properly submitted to the jury even if the plaintiff is making more money at the time of trial than she did prior to injury. *Lytle v Portland*, 89 Or App 315, 317 (1996). Because such a claim is necessarily speculative," a plaintiff can present virtually any type of evidence in support of it. *Barrows v Schneider Nat'l Carriers*, 1998 US App LEXIS 17536 Sl. Op. at 4 (9th Cir July 28, 1998) *citing Richmond*. A vocational expert's testimony examining one's career alternatives based upon her education and abilities is admissible to establish lost earning capacity particularly where the expert assumes the plaintiff will move into a specific kind of work, might shift from an existing occupation into a specific different one or succeed in a narrow, competitive specialty. *Richmond, supra*, 124 Or App at

636. Oregon law recognizes that a plaintiff's loss can only be approximated and specifically includes probable chances of promotion. *Conachan v Williams*, 266 Or 45, 56 (1973).

Claims for impairment of earning capacity are cognizable under federal employment law. *Williams v Pharmacia, Inc.*, 137 F3d 944, 954 (9th Cir 1998); *Jensen v West Jordan City*, 968 F3d 1187, 1200 (10th Cir 2020)(economic damages from narrowing of economic opportunities compensable under Title VII). In *Sanders v Madison Square Garden,* 2007 US Dist LEXIS 57319 (August 6, 2007 SDNY), a New York District Court dealt with a similar claim. In *Sanders,* the Plaintiff was terminated from a public relations position with Madison Square Garden and filed suit, in part, claiming that her earning capacity was impaired by her termination and by prospective employers' knowledge of the facts surrounding her termination. The *Sanders* court held that a claim for reputational damages resulting from unlawful discriminatory conduct was actionable particularly in circumstances where the reputational damage results in economic loss. *Sanders*, supra, 2007 US Dist LEXIS Sl. Op. at 17. In *Sanders*, the court held admissible evidence recruiters made statements in interviews regarding the plaintiff's termination on the grounds that the statements were not submitted to prove the truth of the matter asserted, but rather to show employer awareness of the controversy surrounding the plaintiff's termination. *Sanders, supra*, Sl. Op. at 18.

An award for impaired earning capacity and an award for front pay will not provide Dr. Bala with a duplicate recovery. The verdict form can segregate awards for lost wages, lost future wages and impaired earning capacity. With appropriate instructions and verdict form, there is no duplicative award. See, *Teutscher v Woodson*, 835 F3d 936, 956 (9th Cir 2016.

**3. Mitigation of Damages.** Defendant has asserted an affirmative defense of failure to mitigate damages. A plaintiff discriminatorily discharged from her employment has an

**Page 12 – PLAINTIFF'S TRIAL MEMORANDUM**

obligation to mitigate damages. The duty requires a plaintiff to make reasonable efforts to obtain employment substantially equivalent to the position she was discriminatorily denied. *Ford Motor Co. v EEOC*, 458 US 219, 231-232 (1982). Defendant bears the burden of proving a failure to mitigate damages. *Sias v City Demonstration Agency*, 588 F2d 692, 696 (9th Cir 1978)

There are elements to assert a defense of failure to mitigate damages. A defendant must offer evidence that "at the time in question there were substantially equivalent jobs available, which [the plaintiff] could have obtained, and that [the plaintiff} failed to use reasonable diligence in seeking one." *Odima v Westin Tucson Hotel*, 53 F3d 1484, 1497 (9th Cir 1995).

Three U.S. Circuit Courts of Appeals require that a position be virtually identical with respects to promotional opportunities, compensation, job responsibilities, working conditions, and status to meet the substantially equivalent requirements. *Sellers v Delgado Cmty. Coll.*, 839 F2d 1132, 1138 (5th Cir 1988); *Rasimas v Mich. Dep't of Mental Health*, 714 F2d 614, 624 (6th Cir 1983); *Weaver v Casa Gallardo., Inc*., 922 F2d 1515, 1527 (11th Cir 1991); see also, *Graefenhain v Pabst Brewing Co.*, 870 F2d 1198, 1203 (7th Cir 1989)(wrongfully discharged employee need not seek employment not consonant with skills, background and experience or which involves conditions substantially more onerous than previous position).

In this case, Plaintiff will seek an order in limine precluding Defendants' evidence to support the mitigation defense because Defendants have no evidence to support the defense.

**4. Emotional Distress Damages.** Claimant seeks an award of compensatory damages. On the Title VII claim, compensatory damages claim damages for mental and emotional distress.

On the Section 1983 and State law tort claim, compensatory damages are damages designed to compensate a claimant for the injury caused to the claimant by the respondent's breach of duty. *Memphis Community School v Stachura*, 477 US 299, 307 (1986). An award of

**Page 13 – PLAINTIFF'S TRIAL MEMORANDUM**

compensatory damages must be supported by evidence of "actual injury." *Id.* A plaintiff need not offer medical or psychiatric testimony to prove mental suffering or emotional injury. *Chalmers v City of Los Angeles*, 762 F2d 753 (9th Cir 1985); *Busche v Burkee*, 649 F2d 509, 519 n. 12 (7th Cir 1981). "Emotional distress may be evidenced by one's conduct and observed by others." *Carey v Piphus*, 435 US 247, 263 n. 20 (1978).

With respect to her claim for emotional distress, Plaintiff will offer her own testimony and the testimony of witnesses corroborating her symptoms and extent of emotional distress. With respect to her claim, plaintiff will offer evidence of the emotional distress she suffered while employed at OHSU, the distress attendant to her job search and the effect on her personal life of her loss of her career.

**4. Plaintiff Will Be Entitled To A Jury Determination Of Punitive Damages.** A defendant or employer must act with malice or with reckless indifference to a plaintiff's federally protected rights for a plaintiff to recover punitive damages. The terms malice or reckless indifference pertain to an employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination. *Kolstad v ADA*, 527 US 526, 536 (1999). To be liable for punitive damages, the employer must discriminate in the face of a perceived risk that its actions will violate federal law. *Swinton v Potomac Corp*. 270 F3d 794, 810 (9th Cir 2001). Repeated intentional discrimination increases the conduct's reprehensibility. *Bains LLC v Arco Products Co*., 405 F3d 764. 775 (9th Cir 2005).

Here, under *Kolstad* and *Swinton*, there will be no serious question that Plaintiff's evidence is sufficient to take her claim of punitive damages against Dr. Cigarroa and Dr. Henrikson to the jury. The District Court and the Ninth Circuit have determined that Plaintiff's

evidence is sufficient to create an issue of fact as to intentional, purposeful discrimination sufficient to defeat qualified immunity.

Further, there is clear evidence that both individuals acted in the face of a perceived risk that his actions violated Plaintiff's federally protected rights. In particular, it will be undisputed that plaintiff complained to both individuals that she was being treated differently than the males, that OHSU had policies in place requiring mandatory reporting of such complaints, and that Defendants failed to act on Plaintiff's complaints. Both individuals knew that the law prohibited sex discrimination. Both knew of the results of Linda Strahm's investigations showing the Plaintiff had done nothing wrong. Both individuals knew that excluding Plaintiff from the EP lab was a potential violation of Dr. Bala's rights. Both participated in repeated acts of discrimination, wrongfully limiting clinical privileges, placing Plaintiff on a terminal contract, and interfering with her ability to obtain other employment. Plaintiff will also submit evidence that medical literature, decades old, established both the existence of sex discrimination in academic medical hospitals and the use of discrimination to undermine in leadership positions; and that Defendants should have known of this literature.

5.    **Plaintiff Is Entitled To Pre-Judgement Interest.**    In addition to her economic damages, Claimant requests a post-trial award from the Court of pre-judgment interest on lost wages. Pre-judgment interest is properly assessed by the Court after trial. *Golden State Transit v City of Los Angeles*, 773 F Supp 204 (CD Cal 1991).

6.    **Costs and Attorney Fees.**    Plaintiff seeks a post-trial award of costs and attorney fees under 42 USC §1988, 42 USC 2000e-5(k), ORS 659A.885 and ORS 20.107. The costs and attorney fees claim should be addressed post-trial.

**SUMMARY**

Page 15 – PLAINTIFF'S TRIAL MEMORANDUM

For the reasons set forth above, the Court should allow the six claims remaining in the case to go to the jury.

DATED This 11th Day of March, 2024.

By /s Stephen L. Brischetto
Stephen L. Brischetto

Attorney for Plaintiff

Page 16 – PLAINTIFF'S TRIAL MEMORANDUM