**MATTHEW C. ELLIS, OSB No. 075800**
matthew@employmentlawpdx.com
**Matthew C. Ellis, PC**
1500 SW 1st Avenue, Suite 1000
Portland, Oregon 97201
Telephone: 503/345-5407

**STEPHEN L. BRISCHETTO, OSB No. 781564**
slb@brischettolaw.com
1500 SW 1st Avenue, Suite 1000
Portland, Oregon 97201
Telephone: 503 223-5814
Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **DR. RUPA BALA**,<br><br>                        Plaintiff,<br><br>        v.<br><br>**OREGON HEALTH AND SCIENCE UNIVERSITY, an Oregon public corporation; DR. CHARLES HENRIKSON, an individual; DR. JOAQUIN CIGARROA, an individual.**<br><br>                        Defendants. | **CASE NO. 3:18-CV-00850-HZ**<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE** |

Plaintiff herein responds to Defendants' Motions in Limine.

**MOTION 1: EVIDENCE OR ARGUMENT REGARDING THE COVINGTON REPORT**

Defendants move to exclude evidence of the Covington Report under FRE 402, 403, 404(b)(1), 602 and 90l. Dkt #218 at 3. Defendants argue the Report was issued 4 years after Plaintiff left OHSU, the Report was not specific to the area in which Plaintiff worked, the Report is filled with hearsay and that no witness can lay a foundation to admit the Report. Id. at 1-2. However, the Report is relevant to Plaintiff's case-in-chief and to Plaintiff's rebuttal case.

With respect to Plaintiff's case in chief, Plaintiff set forth at length in Dkt #144 the relevance of the Covington Report. Plaintiff summarizes briefly that discussion. The Covington Report is evidence regarding a discriminatory culture at OHSU.[1] Plaintiff's experts will lay the foundation necessary to link OHSU's organizational culture to an environment in which stereotyping will flourish. See, Dkt #217-1 at 13, 53 (Expert report stating that stereotyping and discrimination represent complex processes that depend on situational context, organizational climate and practices).

In addition to the foundation laid by the experts regarding stereotyping, Dr. Jacobs, Dr. Robinson and Dr. Moawad's statements are all statements a jury can properly find are admissions of a pre-existing organizational culture regarding discrimination in need of change. *Conway v. Electro Switch Corp.*, 825 F.2d 593, 597 (1st Cir. 1987); *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009); *Margolis v Tektronix Inc.*, 44 Fed Appx 138, 141 (9th Cir 2002).

Further, the Covington Report is admissible to establish that OHSU fails to follow its own anti-discrimination policies – evidence that is relevant to establish a discriminatory motive. *Gonzales v. Police Dep't, San Jose*, 901 F.2d 758, 761 (9th Cir. 1990); *See, EEOC v General Tel. Co. of Northwest, Inc.*, 885 F2d 575, 578 (9th Cir 1989)(affirmative action and equal opportunity evidence relevant to establish intent not to discriminate).

With respect to Plaintiff's rebuttal case, in the Joint Pre-Trial Order, Defendants contends that Plaintiff did not make any reports of gender and/or race discrimination to OHSU's Affirmative Action Equal Opportunity Office, that OHSU exercised reasonable care to prevent illegal discrimination or retaliation; and that failed to take advantage of corrective opportunities available to her. Jt. Pre-Trial Order at 7, 22-23, 26-27, 30-31. The Covington Report is particularly relevant to Defendants' contentions regarding Plaintiff's reports, reasonable care and failing to use available corrective opportunities. In particular, the Report documents

---

[1] Exhibit 183 stating that OHSU Board and President commit to "culture change."

**Page 2 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**

STEPHEN L. BRISCHETTO
1500 SW 1st Ave.,, Suite 1000
Portland, Oregon 97201
Telephone: (503) 223-5814

inadequacies in the Human Resources policies that were in existence during Dr. Bala's employment[2], in staffing and in Human Resources functioning in existence for over a decade,[3] and are inconsistent in addressing discrimination, harassment and retaliation.[4]  Under *Gonzalez* and *Gen'l Telephone Co. of Northwest,* the evidence is relevant and admissible to rebut Defendants' contentions.  The Court should deny the Motion to Exclude evidence of the Covington Report.

**MOTION 2: COMPARATORS OUTSIDE REPORTING STRUCTURE**

Defendants move to exclude evidence regarding Dr. Kirsch, Dr. Ma, Dr. Firaz Zahr, Dr. Gary Greenberg and "vague allegations" about men under FRE 401-403.  Dkt #218 at 4 – 5.

Plaintiff's evidence regarding Dr. Ma, Dr. Kirsch and Dr. Greenberg is relevant to establish a discriminatory culture at OHSU.  A central feature of both the Employee Survey in March 2017 and the Covington Report in 2021 was the inability of OHSU's complaint mechanism to hold individuals in leadership positions accountable for misconduct.  Whether these individuals were, or were not, proper comparators[5] of Plaintiff, evidence regarding OHSU's treatment of them is admissible to establish the discriminatory culture at OHSU.

Plaintiff's evidence regarding Dr. Kirsch is admissible for the same reasons as the evidence regarding Dr. Ma and Dr. Greenberg.  However, the evidence regarding Dr. Kirsch is also admissible to establish Defendants' reasons for disciplining Plaintiff were pretextual.  In particular, Plaintiff's evidence regarding Dr. Kirsch establishes that Human Resources and

---

[2] Ex 184 at 16 describing AAEO complaint process
[3] Human Resources has had no effective leader for over a decade; OHSU historically devalued and marginaliaed HR function.  Ex 184 at 36-37. Existing policies are not clear, are inconsistently applied. Id. at 25 - 28
[4] *Id.* at 29
[5] While the Court denied Plaintiff the opportunity to conduct further discovery regarding Dr. Ma, the Court should consider again whether OHSU's different treatment accorded these males (who are Directors of programs) compared to Plaintiff (who was also a Director of a program) is evidence of discrimination particularly given the Covington Report's findings that OHSU failed to consistently administer its complaint process to hold individuals accountable.

**Page 3 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**

OHSU leadership received complaints regarding Dr. Kirsch's use of bullying and veiled threats to intimidate others. Yet, in spite of this knowledge, and in spite of an investigation that cleared Plaintiff of wrongdoing, Human Resources allowed Dr. Kirsch to use intimidation and veiled threats restrict Plaintiff's clinical privileges and impose discipline on her.

Plaintiff's evidence regarding Dr. Zahr is admissible because he worked in the same workplace with Plaintiff, interacted with the same staff as Plaintiff, engaged in the same behaviors as Plaintiff. There is no evidence that Dr. Zahr is subject to a different reporting structure. However, even if he was, the staff's toleration of Dr. Zahr's behavior while making complaints regarding Plaintiff; and the supervisors failure to investigate Plaintiff's complaints that Zahr and others were treated differently is admissible to establish a discriminatory motive.

## MOTION 3: BAD CHARACTER, CULTURE OF DISCRIMINATION, ME-TOO

Defendants move preclude 'bad character,' a culture of discrimination, "me-too" evidence and nonspecific workplace impressions under FRE 401-404. Dkt #218 at 5.

### A. 'ME-TOO' AND ALLEGED BAD CHARACTER EVIDENCE

Defendants seek to exclude portions of the testimony of Dr. Maureen Mays, Dr. Jill Gelow and Kathy Heitman-Allen. *Id.* at 6. With respect to Dr. Mays, Defendant moves to exclude her testimony in its entirety. Dr Mays will testify that Dr. Kaul stated that there were four women in Cardiology and that he hoped they were happy; Kaul talked for 30 minutes at a faculty meeting about the color of his penis; and that Kaul referred to Mays and a colleague as "girly." Derogatory comments by a decision-maker creates an inference of a discriminatory motive even if the remarks are directed at an employee other than Plaintiff. *Cordova v. State Farm Ins. Cos.*, 124 F.3d 1145, 1149 (9th Cir. 1997). Further, Defendants challenged Dr. Mays' testimony concerning her observation of sex stereotyping in the Department. Dr. Kaul criticizing

Page 4 – PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS IN LIMINE

STEPHEN L. BRISCHETTO
1500 SW 1st Ave.,, Suite 1000
Portland, Oregon 97201
Telephone:  (503) 223-5814

Dr. Mays for crying; describing Dr. Mays as immature and childish; Dr. Kaul reacting negatively when she raised the double standard in the Department. This testimony is admissible under both Cordova and *Heyne v Caruso,* 69 F3d 1475, 1479 (9th Cir 1995)(holding testimony of other employees treatment by defendant is relevant to the employer's discriminatory intent).

Defendants seek to exclude Dr. Mays' testimony that Dr. Cigarroa and Dr. Kaul terminated her employment because of sex stereotypical perceptions of her communication style asserting she was "childish" and couldn't get along with others. This testimony is also admissible under *Heyne* and *Cordova*, because sex stereotypical, discriminatory remarks were made in her termination by two of the three decision-makers who terminated Plaintiff.

Defendants also seek to exclude Dr. Mays' testimony on the grounds that it came to long before Dr. Bala's employment. However, Dr. Mays' testimony should be considered together with Dr. Gelow's and Ms. Heitman-Allen. Together, the three women establish that a discriminatory culture for women existed for a long period of time, that the culture was known to leadership, and that the culture continued unabated during Dr. Bala's employment.

With respect to Dr. Gelow, Defendants seek to exclude Gelow from discussing her observations that Dr. Cigarroa attempted to "push-out" Dr. Shenje, an African-American cardiologist.[6] Dr. Gelow's testimony is admissible lay opinion testimony. Lay opinion testimony of discrimination is admissible "when given by a person whose position with defendant entity provides the opportunity to personally observe and experience the defendant's policies and practices." *Gossett v Oklahoma ex rel. Bd. of Regents*, 245 F3d 1172, 1179 (19th Cir

---

[6] Defendant does not seek to exclude Dr. Gelow's testimony that Dr. Kaul made statements to the effect that he wished they could go back to a time when women weren't doctors; told she had too much estrogen; that OHSU was not accommodating to women's needs; that Dr. Henrikson did not stand up for Dr. Bala; that the culture is not one where people can speak up; that Gelow raised concerns about the culture with Anderson, Kaul and Cigarroa; and that there were men in cardiology who were much worse communicators than Dr. Bala

**Page 5 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**

2001).  Here, Dr. Gelow's witness statement shows she was in a position to personally observe and experience Defendant's policies and practice; and that her testimony regarding Dr. Shenje is not "naked speculation."  See, *Hester v BIC Corp.*, 225 F3d 178, 185 (2d Cir 2000).

With respect to Ms. Heitman-Allen, Defendants seek to exclude Hietman-Allen's testimony that a Nurse Manager, Workman, told Heitman that Dr. Cigarroa campaigned against strong females and that Dr. Cigarroa engaged in a pattern of actions against strong females.  Dkt #218 at 6.[7]  Heitman-Allen's testimony of Nurse Manager's Workmans' statements during Workman's employment are admissions of an employee under FRE 801(d)(2)(D).  Heitman-Allen's testimony regarding the pattern existing within Cardiology is admissible as lay opinion testimony of other women's treatment to establish the employer's motive under *Heyne*.

Finally, the testimony of the three women related to "sex stereotyping" in Cardiology "ties" the discriminatory atmosphere in the workplace to two of Plaintiff's decision-makers: Dr. Cigarroa and Dr. Kaul.  *Margolis v Tektronix Inc.*, 44 Fed Appx 138, 141 (9th Cir 2002).

## B.  DISCRIMINATORY CULTURE

Defendants motion seeks to exclude testimony of Dr. Danny Jacobs, Dr. David Robinson, and Diane Lund-Muzikant; and evidence concerning the Covington Report, Drs. Ma, Kirsch and Greenberg, the Faculty Survey, the tik-tok doctor and senior associate dean Dkt #218 at 8-9.

The evidence Defendants challenge is admissible in both Plaintiff's case-in-chief to establish discriminatory intent and in Plaintiff's rebuttal case to respond to Defendants' contentions.  With respect to Plaintiff's case in chief, the challenged evidence is relevant to establish a "discriminatory atmosphere" at plaintiff's place of employment.  This evidence is relevant to prove motive in an individual employment case. *Conway v. Electro Switch Corp.*, 825

---

[7] Defendants do not seek to exclude Heitman-Allen's testimony that her employment would not have ended at OHSU if she were male or if she wasn't a strong-opinionated women.  Plaintiff's Witness Statements at 57.

**Page 6 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**

F.2d 593, 597 (1st Cir. 1987)(holding discriminatory atmosphere may indicate reasons given for an employment action were implicitly influenced by discrimination); *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 393 (6th Cir. 2009)(discriminatory statements by managers suggest a discriminatory culture.  A witnesses' positions in the hierarchy, the purpose and content of the statement, and the temporal connection between the statement and the challenged action.  Id. , 132.  Evidence of discriminatory atmosphere is admissible in the Ninth Circuit.  *Margolis v. Tektronix, Inc.*, 44 F. App'x 138, 141 (9th Cir. 2002).

Here, Plaintiff's testimony from Lund-Muzikant and Robinson establish that, in March 2017, a short time prior to Plaintiff's departure from OHSU and contemporaneous with Plaintiff's complaints of sex discrimination to leadership of Human Resources, Cardiology and Medicine, two highly placed executives of OHSU (Robinson and Moawad) made public statements admitting OHSU had a problem with discrimination and harassment.;  Robinson and Moawad's statements were in response to public disclosure of the employee survey.[8]

The challenged evidence is also rebuttal evidence relevant to Defendants' contentions that Plaintiff did not report discrimination to OHSU's Affirmative Action Equal Opportunity Office; that OHSU exercised reasonable care to prevent illegal discrimination or retaliation in the workplace, and Plaintiff failure to take advantage of corrective opportunities provided should defeat her claim.  Jt. Pre-Trial Order at 7, 22, 26, 30.  Plaintiff's evidence of Danny Jacobs' public statements, the Covington Report, evidence regarding OHSU's failure to discipline Dr. John Ma and Dr. Kirsch in spite of years of reports of inappropriate conduct are relevant and

---

[8] Defendant argues that there is no evidence connecting the faculty survey to a culture of discrimination.  However, Dr. Robinson's statements that OHSU had discrimination and harassment going on and Mr. Moawad's statement that OHSU knew as of 2015 that it had discrimination going on upon public disclosure of the survey in March 2017 establishes the link between the survey and OHSU's admission to the existence of an atmosphere of discrimination at OHSU.

Page 7 – PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS IN LIMINE

STEPHEN L. BRISCHETTO
1500 SW 1st Ave.,, Suite 1000
Portland, Oregon 97201
Telephone:  (503) 223-5814

admissible to show that OHSU does not exercise reasonable care to prevent illegal discrimination or retaliation and that any failure to further use the OHSU complaint process would not have affected plaintiff's claim.

With respect to the tik-tok doctor and the Senior Associate Dean, Plaintiff does not intend evidence of those incidents with respect to her claim of a discriminatory atmosphere. Rather, plaintiff intends briefly raise those incidents as triggers raising her feelings of emotional distress from her employment with OHSU. The Court should deny Motion 3 in its entirety.

**MOTION 4: VALIDITY OF REPORTS OF SUBSTANDARD PATIENT CARE**

Defendants move to exclude evidence of the validity of Plaintiff's reports of substandard care, - specifically that OHSU's business or clinical practices were dangerous to patients or resulted in adverse outcomes under FRE 401 - 403. Dkt #218 at 9- 10. Defendants argue the evidence risks disclosure of patient quality of care issues; disclosure of protected health information and is inflammatory, irrelevant, a waste of time and a distraction citing *Hall v State*, 274 Or App 445, 453-54 (2015) and *Pearson v Reynolds Sch. Dist. No. 7,* 998 F Supp. 2d 1004, 1024 (D. Or. 2014) as support for this argument. The Court should deny this motion.

Both *Hall* and *Pearson* discuss the "subjective good faith belief" or the "objectively reasonable" of a claim for retaliation. Both stand for the proposition that, with respect to the first element of a retaliation claim, whether the employee held a "subjective good faith belief" or whether the employee "objectively believed" there was a violation of law is based upon the information the employee had at the time of the report. *Ha*ll, supra, 274 Or App at 253 ("good faith related to what the employee knew at the time.")

Neither case addresses the relevance of the evidence to the issue of causation. Defendants' concede Plaintiff was disciplined for staff complaints that Plaintiff was rude, unprofessional and harassing. Plaintiff's evidence these complaints were the result of Plaintiff's

valid reports of substandard care is evidence of pretext. A plaintiff may establish pretext through evidence the reasons proferred by the employer were false and pretextual. *Keyser v Sacramento Unified School District*, 265 F2d 741, 751-52 (9th Cir 2001). Evidence of the validity of an employee's protected activity is relevant to establish the motive of those complaining about her. *Allen v Iranon*, 283 F3d 1070, 1078 (9th Cir 2002)(validity of employee's testimony that he reported assault to supervisor established an issue of fact as to pretext). Here, the validity of Plaintiff's concerns that employees were not properly training or were making mistakes is evidence as to the same employees' motives to retaliate as well as supervisors motives to cover up Plaintiff's concerns. There is no "undue" prejudice in admitting relevant evidence of motive.

## MOTION 5: DISMISSED CLAIMS AND RESOLVED ALLEGATIONS

Plaintiff has no intent to re-litigate her hostile work environment claim, her retaliation claim for reporting sex or sex/race discrimination, whether the Performance Expectation Plan and pre-procedural huddle were adverse actions or whether investigations were adverse actions for purposes of the discrimination claim. This aspect of the Motion should be denied as moot.

Further, Defendants filed no motion directed at Plaintiff's claims for discrimination or retaliation based upon negative references. There is no decision dismissing the claims for discriminatory negative references. Defendants point to nothing in the record to support the argument that this claim was analyzed or resolved. Further, plaintiff's claims that Defendants' investigations were an adverse action for purposes of the retaliation claim remain in the case.

## MOTION 6: WHETHER SAFETY PAUSE WAS A RESTRICTION OF PRIVILEGES

Defendants move to prohibit Plaintiff from using "restriction of clinical privileges" to describe what Defendants contends is a "safety pause" on procedures. Dkt #218 at 10-11.

At summary judgment, Defendants' argued that Plaintiff's exclusion was a "pause" on Plaintiff conducting procedures. Plaintiff presented evidence her exclusion from conducting procedures was a restriction on clinical procedures; and the restriction violated OHSU's medical staff by-laws. Magistrate You found that Dr. Kirsch sent Plaintiff an email on November 12,

**Page 9 – PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS IN LIMINE**

2015 accusing Plaintiff of bullying; that Linda Strahm investigated Dr. Kirsh's allegation and [d]uring the investigation, plaintiff was not permitted to work in the clinic. F&R, Dkt # 149 at 17. Subsequently, Magistrate You found that Defendants' "... restriction of plaintiff's clinical privileges that resulted from defendant's investigation ... was an adverse action because it prevented plaintiff from treating her patients." F&R, Dkt #149 at 19. The Magistrate's finding that Plaintiff's privileges were restricted was not changed upon review by this Court. See, Dkt #159. Defendants present no reason the Magistrate's ruling should be changed.

Defendants argue that allowing Plaintiff to call the 'safety pause' something that it was not will result in a mini-trial about OHSU policies that have nothing to do with motive. However, evidence that an employer fails to follow its own policies is circumstantial evidence of discrimination and retaliation. Defendants' motion should be denied.

**MOTION 7:   DAMAGES EVIDENCE BECAUSE OF EXISTENCE OF LAWSUIT**

This motion should be denied because the first part of it is moot; and, the second part is not properly explained, supported or preserved in the record. Defendant moved in limine to exclude evidence plaintiff has been damaged due to the existence of her lawsuit. Dkt #218 at 11. Defendants rely upon *School District No. 1 v Nilsen*, 271 Or. 461, 485 (1975) and *Strugari v Sagamore Ins. Co*., 2022 WL 18865103 Sl. Op. at 2 (D. Or. Nov 10, 2022) to support this argument. Defendants cite *School District No. 1* and *Strugari* for the proposition that emotional distress resulting from litigation is not compensable. Dkt #218 at 11.

Defendants' motion seeking to exclude evidence of emotional distress resulting from the litigation should be denied as moot. Defendants have not objected to Plaintiff's witness statements or exhibits asserting they discuss emotional distress resulting from litigation. Plaintiff has no intent to offer any evidence of emotional distress resulting from litigation. Since Defendants have not objected to any evidence on the grounds asserted; and since Plaintiff has no intent of offering such evidence, the motion is moot.

The last sentence of the Motion seeks to preclude evidence the "existence of the lawsuit has, in and of itself, damaged or harmed her in any way." Dkt # 218 at 12. Defendants do not explain what this aspect of the motion means or submit authority for the broader proposition. Plaintiff witness statements and expert witness narratives contain refer to the challenges Plaintiff has faced in securing employment due to the nonrenewal of her contract, Defendants' negative statements to potential employers, and recruiters' knowledge of OHSU's actions from uninvited coverage of the lawsuit on the internet; as well as Plaintiff's emotional distress resulting from the damage to her career. Plaintiff has submitted authority for the proposition this evidence is admissible. See, *Sanders v Madison Square Garden,* 2007 US Dist LEXIS 57319 (August 6, 2007 SDNY). Defendants waived any objection to this evidence by failing to raise the objection in response to witness and expert statements. The Court should deny this second part of the Motion because Defendants failed to explain and submit authority supporting this part and failed to preserve this argument in objections to witness statements and expert narratives.

## SUMMARY

The Court should deny Defendants' Motions in Limine.

JULY 10, 2020

STEPHEN L. BRISCHETTO

   /Stephen L. Brischetto
Stephen L. Brischetto, OSB #78154
Telephone: (503) 223-5814

Attorneys for Plaintiff

Page 11 – PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTIONS IN LIMINE

STEPHEN L. BRISCHETTO
1500 SW 1st Ave.,, Suite 1000
Portland, Oregon 97201
Telephone: (503) 223-5814