**MATTHEW C. ELLIS, OSB No. 075800**
matthew@employmentlawpdx.com
**Matthew C. Ellis, PC**
1500 SW 1st Avenue, Suite 1000
Portland, Oregon 97201
Telephone: 503/345-5407

**STEPHEN L. BRISCHETTO, OSB No. 781564**
slb@brischettolaw.com
1500 SW 1st Avenue, Suite 1000
Portland, Oregon 97201
Telephone:  503 223-5814

Of Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **DR. RUPA BALA**,<br><br>                     Plaintiff,<br><br>          v.<br><br>**OREGON HEALTH AND SCIENCE UNIVERSITY**, an Oregon public corporation; **DR. CHARLES HENRIKSON**, an individual; **DR. JOAQUIN CIGARROA**, an individual.<br><br>                     Defendants. | CASE NO. 3:18-CV-00850-HZ<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFF'S REBUTTAL WITNESS STATEMENTS** |

Defendants have filed objections to Plaintiff's Rebuttal Witness Statements.  The Court should overrule Defendants' Objections in their entirety for the reasons set forth below.

### 1.   Response To Objection To Dr. Bala Calling Herself As A Rebuttal Witness.

Defendants object to Plaintiff calling herself as a rebuttal witness in her own case to rebut testimony that has not yet occurred. This objection should be overruled.  Defendants' witness

statements are not specific enough—nor could they ever be—for Plaintiff to articulate what, precisely, she will need to say to rebut the actual testimony at trial. While the statements may put Plaintiff on notice as to the *topics* of the testimony with some particularity, they do not, nor were they designed to, alert Plaintiff as to every word each witness will utter over the 2 ½ years of Plaintiff's employment.

Simply by way of example, on p. 103 of Defendants' witness statement (Dkt. 208), Ms. Paladino says she will testify as to "an incident with plaintiff involving increasing a patient's medication and how plaintiff's conduct made her feel." Even if Plaintiff knew with certainty what this referred to—and she does not—she may need to provide testimony to rebut Ms. Paladino's specific testimony based on what Ms. Paladino actually says at trial about the interaction at issue. Plaintiff could give a similar example from nearly every page of defendants' witness statements. Because Plaintiff cannot anticipate what Defendant's will actually say, she cannot identify what her specific rebuttal testimony will be.

Defendants know this is true. Defendants' own witness statements start with the overarching comment that, in addition to the testimony summarized, every witness will also provide testimony "*in response to the issues raised by plaintiff . . . in her case in chief.*" Dkt. 208, p 2. Defendants took this position since they know the specific words that will come out of Plaintiff's witnesses' mouths—many of whom are adverse to Plaintiff—remain unknown, even when the general substance is summarized, and they need some latitude to respond to the specific testimony depending on how the evidence comes out at trial. The devil is in the details. Defendants' objections to Plaintiff testifying in direct rebuttal to Defendant's own witnesses should be overruled.

    2.    **Response To Objection To Dr. Murphy As A Rebuttal Witness.**

Mr. Murphy's testimony is that he, personally, found Plaintiff to be professional and good natured is not any more character evidence than Defendants' witnesses' observations that they found her to be the opposite; and his testimony directly rebuts that testimony. Just as Defendant may offer firsthand testimony from individuals that they perceived Plaintiff as a bully, abrasive or unprofessional (and nearly every defense witness intends to do just that), Plaintiff can rebut that testimony to show others perceived her *not* as a bully in particular settings to show that reasonable people can differ in their perspective of Plaintiff's communication style, as well as bias by Defendants. Naturally, if no one says those things there will be nothing to rebut, but Plaintiff should be permitted to rebut that testimony with the experience of others at OHSU who had a different perspective of Plaintiff, such as Murphy. Neither testimony is (or should be) offered to show Plaintiff has *tendency* to be good (or bad), nor that she acted in conformance with a certain trait or character in any particular instance. Thus, assuming the scope of testimony is relevant, the experiences of both sets of individuals working with Plaintiff are admissible since neither is offered to prove that "on a particular occasion the person acted in accordance with the character or trait." FRE 404(a)(1) *See also* FRE 404(b)(1).

Dr. Murphy's testimony about his clinical work with Plaintiff and her "being interested in both of their patients" also rebuts the testimony of numerous witnesses, who testify that Plaintiff's communication style in clinical settings was inconsistent with patient care or could sacrifice patient care, and that she was not part of a cohesive team. Dr. Murphy's experience in clinical settings with Plaintiff was different —he found her engaging and a good team member—and Plaintiff should be able to call him to respond to that testimony, if so elicited by the defense.

In addition, Dr. Murphy's testimony about his experiences with Plaintiff in a team setting improving protocols are not hearsay since they are not offered for the truth of the matter asserted.

For example, they are not offered to show what the proposed changes actually were. Instead, the testimony rebuts testimony by many that Plaintiff was 1) non-collaborative in her effort to make protocol changes, and 2) that Defendants actually supported the protocol changes. Thus. Dr. Murphy's testimony is appropriate to rebut this line of testimony. Defendants' objections should be overruled as to Dr. Murphy.

### 3. Response To Objection To Doug Scechulte As A Rebuttal Witness.

Defendants' witness, Clarice Gerlach, intends to testify about Plaintiff's demeanor in a particular procedure in August 2015 and how, "in 40 years of experience as an RN and OHSU, she has never been disrespected or mistreated like she had been by Plaintiff" on that day. Mr. Scechulte was standing right next to Ms. Gerlach during the same procedure and will testify that his experience was the near opposite of Ms. Gerlach's. He will further testify that he was surprised when he observed that Ms. Gerlach was upset by Plaintiff, and even more surprised that she reported Dr. Bala for conduct which was consistent with good patient care. This directly rebuts all of her testimony. Even if Ms. Gerlach does not testify, Mr. Scechulte's testimony about his work with Dr. Bala is further relevant to show that the complaints being generated against Plaintiff were overstated, or that reasonable minds could differ as to their validity. After all, he took interactions that some saw as very negative and viewed them very positively, and Dr. Henrikson was appraised of Ms. Gerlach's complaint and relied on it, per their witness statements and his deposition, and there is no question that Dr. Henrikson will testify.

Mr. Scechulte's testimony about his experiences with Dr. Bala, in contrast with Cigarroa, also directly rebuts the testimony of numerous witnesses. *See e.g.* Dkt 208, p. 49. (Ms. Gerlach will testify that "her experiences with other Cardiology providers was positive, including experiences she had providing procedures with . . . Dr. Cigarroa" and that "Dr. Cigarroa interact(s)

professionally with their colleagues.") *Id*. p. 83-4 (Ms. Kelly will testify about her "experience working on EP cases and in the cath lab with other physicians, including. . . Dr. Cigarroa" and that Dr. Cigarroa was "kind and respectful to OHSU staff and learners." ) *Id*. at p. 98 ( Dr. Mehta will testify that "Dr. Cigarroa is a kind, intelligent and principled person") *Id*. at p. 125. (Mr. Turner will testify that "Dr. Cigarroa treated him and his colleagues with respect both in and out of the procedure room.") While much of this testimony from Defendants truly is improper character evidence under FRE 404 (*i.e.* it is offered to show that Dr. Cigarroa was, for example, kind and respectful in the lab, to show that he is a kind and respectful provider, *generally*)  if this testimony is admissible this testimony directly rebuts the testimony at issue.

Lastly, Defendants object to Mr. Scechulte's testimony that cardiac nurses at OHSU file a lot of complaints and are territorial as hearsay and speculation.  Yet, this testimony is admissible lay opinion testimony under FRE 701 since it is rationally based on his own firsthand observations which are not hearsay and are not based on speculation.  Also, his observations that the nurses tell their supervisors how to do their jobs is relevant because it helps to understand the witness's testimony and to determining a fact in issue in the case. This evidence helps explain why, while he was shocked that Ms. Gerlach filed a complaint against Bala, he was not exactly *surprised* by it given the culture of complaining about minor issues by cardiac nurses at OHSU. This is offered to rebut the testimony that the complaints at issue in the case—mostly presented by nurses and technicians—were not based on an accurate assessment of plaintiff's behavior, but on a biased culture that encouraged complaints by nurses to be filed at the drop of a hat when they felt threatened by a provider against whom they were biased.  This is an appropriate topic for rebuttal testimony and the Court should overrule the objections to this line of testimony.

/ / /

**Page 5 – PLAINTIFF'S RESPONSE TO DEFENDANTS' OBJECTIONS TO PLAINTIFF'S REBUTTAL WITNESS STATEMENTS**

MATTHEW C. ELLIS, PC
1500 SW First Avenue, Suite 1000
Portland, Oregon 97201
Telephone:  (503) 345-5497

### 4. Conclusion.

Defendants' objections should be overruled.

DATED this 3rd Day of April, 2024

                                                 s/Matthew C. Ellis
Matthew C. Ellis, OSB #075800
1500 SW First Avenue, Ste 1000
Portland, Oregon 97201
Ph: 503-345-5497
matthew@employmentlawpdx.com

Attorney for Plaintiff