IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DR. RUPA BALA,                                    No. 3:18-cv-00850-HZ

               Plaintiff,                    OPINION & ORDER

    v.

OREGON HEALTH AND SCIENCE
UNIVERSITY, an Oregon public
Corporation; DR. CHARLES
HENRIKSON, an individual; DR.
JOAQUIN CIGARROA, an individual,

               Defendants.

Matthew C. Ellis
Matthew C. Ellis, PC
1500 SW 1st Ave, Ste 1000
Portland, OR 97201

Stephen L. Brischetto
Law Offices of Stephen Brischetto
1500 SW 1st Ave, Ste 1000
Portland, OR 97201

      Attorneys for Plaintiff

Brenda K. Baumgart
Andrea H. Thompson
M. Sophie Shaddy-Farnsworth
Megan S. Bradford
Stoel Rives LLP
760 SW 9th Ave, Ste 3000
Portland, OR 97205

      Attorneys for Defendants

HERNÁNDEZ, District Judge:

      Before the Court are Plaintiff's Motion for Costs and Amended Motion for Attorney

Fees. ECF 306, 314. Defendants oppose both Motions in part. For the following reasons, the

Court grants both Motions in part.

## BACKGROUND

      Plaintiff, an electrophysiologist, filed this employment discrimination lawsuit against

Oregon Health and Science University ("OHSU") and Drs. Charles Henrikson and Joaquin

Cigarroa on May 15, 2018. ECF 1. She amended her complaint twice. The Second Amended

Complaint, filed on February 11, 2019, alleged eight causes of action: (1) violation of Plaintiff's

Equal Protection rights under 42 U.S.C. § 1983; (2) race discrimination under 42 U.S.C. § 1981;

(3) retaliation for reporting substandard patient care in violation of O.R.S. 441.057 (later

441.044); (4) retaliation for reporting substandard patient care and sex discrimination in violation

of O.R.S. 659A.199; (5) retaliation and sex and race discrimination in violation of O.R.S.

659A.030; (6) sex discrimination in violation of 20 U.S.C. § 1681 (Title IX); (7) sex and race

discrimination and retaliation in violation of Title VII of the Civil Rights Act; and (8) common-

law wrongful discharge. ECF 11.

      Magistrate Judge Youlee Yim You handled this case through summary judgment. During

that approximately four-year period, the parties engaged in extensive discovery characterized by

several major discovery disputes. Defendants moved for summary judgment on August 8, 2021. ECF 118. Judge You issued her Findings and Recommendation on August 10, 2022. ECF 149. On December 13, 2022, this Court adopted Judge You's Findings and Recommendation in part and declined to adopt it in part. ECF 159. The summary judgment proceedings resulted in the dismissal of some of Plaintiff's claims. Her claims under sections 1983 and 1981 against Defendant OHSU were dismissed, as were all of her retaliation claims to the extent they were based on reporting discrimination, and her discrimination claims based on a hostile work environment theory. Plaintiff's wrongful discharge claim was also dismissed. Defendants Henrikson and Cigarroa were denied qualified immunity.

Defendants appealed the denial of qualified immunity. On February 2, 2024, the Ninth Circuit issued a memorandum opinion affirming the denial of qualified immunity and also held that 42 U.S.C. § 1981 did not provide an implied cause of action. Mem. Op., ECF 191. This Court declined to permit Plaintiff to amend her § 1983 claim because it already encompassed the conduct alleged in the § 1981 claim. ECF 194. The Court held a pretrial conference on April 9, 2024, and ruled on the parties' pretrial motions, including several *Daubert* motions. ECF 261.

Trial began on April 15, 2024, and lasted for ten days. The Court granted Defendants' motion for judgment as a matter of law on Plaintiff's discrimination claims based on a theory of race-and-sex discrimination, but allowed the claims to proceed on a theory of sex discrimination. Two theories of recovery went to the jury: (1) sex discrimination (in violation of § 1983, Title IX, Title VII, and O.R.S. 659A.030), and (2) retaliation for reporting substandard patient care (in violation of O.R.S. 659A.199 and 441.044). The jury returned a verdict in favor of Plaintiff on the discrimination claims and in favor of Defendant OHSU on the retaliation claims. ECF 284. The jury awarded Plaintiff $1,120,000 in lost past wages and benefits, $2,809,600 in lost future

wages and benefits, and $70,400 in emotional distress damages. *Id.* The Court then asked the jury to decide whether punitive damages should be awarded against Defendants Henrikson and Cigarroa on the § 1983 claims. The jury did not award any punitive damages against Defendant Cigarroa and awarded $50,000 in punitive damages against Defendant Henrikson. ECF 286. The Court entered judgment on May 20, 2024. ECF 305. Plaintiff then timely filed the present Motions. Defendants did not appeal the judgment.

## DISCUSSION

First, the Court addresses Plaintiff's Bill of Costs and concludes that Plaintiff is the prevailing party and that some but not all of her costs are taxable. Second, the Court addresses Plaintiff's Amended Motion for Attorney Fees and determines the appropriate award of attorney fees, expert witness fees, and non-taxable costs.

## I.    Costs

### A.    Standards

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). "[T]he word 'should' makes clear that the decision whether to award costs ultimately lies within the sound discretion of the district court." *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 377 (2013). That discretion, however, is confined to the categories of recoverable costs enumerated at 28 U.S.C. § 1920. *Alflex Corp. v. Underwriters Lab'ys, Inc.*, 914 F.2d 175, 176 (9th Cir. 1990).

"[A] district court need not give affirmative reasons for awarding costs; instead, it need only find that the reasons for denying costs are not sufficiently persuasive to overcome the presumption in favor of an award." *Save Our Valley v. Sound Transit*, 335 F.3d 932, 945 (9th

Cir. 2003). *See also Dawson v. City of Seattle*, 435 F.3d 1054, 1070 (9th Cir. 2006) ("[A] losing party must establish a reason to deny costs.").

      B.     Application

Plaintiff seeks to recover a total of $46,789.23 in costs. Pl. Mot. Costs 2, ECF 306. Defendants first object to Plaintiff's Bill of Costs in its entirety, arguing that Plaintiff is not the prevailing party. Def. Resp. Costs 3-4, ECF 318. In the alternative, Defendants object to some of the costs Plaintiff seeks as improper or unjustified under the statute. *Id.* at 4-10.

      i.     Prevailing Party

In her Motion for Costs, Plaintiff states, "there is no question that Plaintiff is the prevailing party in the case and is entitled to costs under 28 U.S.C. § 1920." Pl. Mot. Costs 2. Defendants argue that Plaintiff is not the prevailing party because this case resulted in a mixed judgment. Def. Resp. 3. "In the event of a mixed judgment . . . it is within the discretion of a district court to require each party to bear its own costs." *Amarel v. Connell*, 102 F.3d 1494, 1523 (9th Cir. 1996), *as amended* (Jan. 15, 1997). Defendants point to a case from this district in which the plaintiff asserted three claims, lost on two of them before the jury, and obtained partial injunctive relief on the third. Def. Resp. 3-4 (citing *Univ. Acct. Serv., LLC v. Schulton*, No. 3:18-CV-1486-SI, 2020 WL 4053499, at *1-*2 (D. Or. July 20, 2020)). Under those circumstances, the district court declined to award costs to the plaintiff or one of the defendants. 2020 WL 4053499, at *2.

Here, Plaintiff brought eight claims for relief in the operative complaint, several of which included multiple theories, such as retaliation and discrimination. As detailed above, Plaintiff proceeded to trial on six of her claims and prevailed on four of them on the same theory of sex discrimination. Two of the claims did not proceed to trial, and the jury found for Defendant

OHSU on the two retaliation claims that did go to trial. Several of Plaintiff's theories under the remaining claims also lost at summary judgment or on a directed verdict. With respect to damages, Plaintiff obtained a verdict of over $4 million in damages, a significant sum but also significantly less than the amount sought at trial. The Court concludes that under the circumstances Plaintiff should be considered a prevailing party. While she did not prevail on all of her claims, she prevailed on half of them and won a verdict of over $4 million. The claims on which she prevailed covered the bulk of the conduct that was alleged to be discriminatory. In contrast, the plaintiff in *University Accounting Service* lost on two of three claims and obtained only part of the injunctive relief it sought on the other claim. Plaintiff's degree of success here is enough that she should be considered the prevailing party. The Court therefore proceeds to consider Defendants' specific objections to Plaintiff's costs.

   ii.  Reduction of Costs

    a.  Clerk Fees

   Plaintiff seeks to recover the $400 filing fee. Pl. Mot. 2. Defendants do not object to this cost. The Court awards Plaintiff this cost.

    b.  Service Fees

   Plaintiff seeks to recover $80 for serving witness Jill Gelow, and $85 for serving witness Diane Lund. Pl. Mot. 2. Defendants argue that these costs are not recoverable because neither witness testified at trial. Def. Resp. Costs 9. The Court excluded Ms. Lund's testimony, and Plaintiff did not call Ms. Gelow. *Id.* The Court will allow service costs for Ms. Gelow because she was permitted to testify and was on Plaintiff's witness list immediately before trial. The Court will not allow service costs for Ms. Lund because Plaintiff had no credible argument that her testimony would be admissible. The Court therefore awards Plaintiff $80 in service fees.

c.      Transcript Fees

Plaintiff seeks to recover $40,156.20 in costs for obtaining deposition transcripts. Pl.

Mot. 3-6. The statute permits recovery of "[f]ees for printed or electronically recorded transcripts

necessarily obtained for use in the case." 28 U.S.C. § 1920(2). This includes the cost of obtaining

deposition transcripts. *Ass'n of Flight Attendants v. Horizon Air Indus., Inc.*, 976 F.2d 541, 551

(9th Cir. 1992). The district court may tax those costs even if the transcripts were not used at

trial. *Sea Coast Foods, Inc. v. Lu-Mar Lobster & Shrimp, Inc.*, 260 F.3d 1054, 1061 (9th Cir.

2001). A prevailing party may also recover the cost of obtaining transcripts of trial and pretrial

proceedings. *Indep. Iron Works, Inc. v. U.S. Steel Corp.*, 322 F.2d 656, 677-78 (9th Cir. 1963).

To recover the cost of transcripts, the prevailing party must show that the transcripts were

reasonably necessary. *See id.* at 678.

Defendants challenge Plaintiff's transcript costs to the extent Plaintiff seeks to recover

costs associated with video depositions. Def. Resp. Costs 5-7. The Ninth Circuit has not ruled on

the required showing for a party to recover the cost of video depositions, but courts in this

district generally require a particularized showing of why video depositions were necessary in

the case in addition to a written transcript. *Sneath v. Clackamas Cnty.*, No. 3:16-CV-01907-YY,

2019 WL 13308852, at *1 (D. Or. July 19, 2019) (collecting cases). Courts in this district have

found video depositions reasonably necessary when the litigation was large-scale and

particularly antagonistic. *Adidas Am., Inc. v. Herbalife Int'l, Inc.*, No. 3:09-CV-00661-MO, 2012

WL 13051118, at *1 (D. Or. Sept. 5, 2012). On the other hand, courts in this district have found

video depositions not reasonably necessary where the video showed the deponent's demeanor

because such reasoning could apply in every case. *E.g.*, *Pullela v. Intel Corp.*, No. CV 08-1427-

AC, 2010 WL 3361089, at *3 (D. Or. Aug. 25, 2010); *Mendoza v. Lithia Motors, Inc.*, No. 6:16-CV-01264-AA, 2021 WL 354108, at *3 (D. Or. Feb. 2, 2021).

Plaintiff argues that the video depositions were reasonably necessary because (1) several witnesses were out of state, beyond the Court's subpoena power, (2) some of the witnesses were "critical defense witnesses," and (3) Defendants took video depositions of all of Plaintiff's witnesses. Pl. Mot. Costs 4. Defendants counter that Plaintiff's explanations are insufficient. Def. Resp. Costs 6. The Court agrees. The Court has previously rejected the first reason Plaintiff relies on, the risk that a deponent will be unable to testify at trial, because it is present in every case. *Skedco, Inc. v. Strategic Operations, Inc.*, No. 3:13-CV-00968-HZ, 2016 WL 8678445, at *15 (D. Or. Apr. 1, 2016). The Court also rejects Plaintiff's second argument because such reasoning could apply in any case and is not particularized to this case. The Court rejects Plaintiff's third argument because it says nothing about whether a video deposition was reasonably necessary. In sum, Plaintiff has not shown that video depositions were reasonably necessary in this case. Defendants identify $9,982.50 in costs associated with video depositions. Thompson Decl. Costs Ex. 1, ECF 319. Plaintiff does not dispute that this represents the costs associated with video depositions. The Court will reduce Plaintiff's cost award by that amount.

The Court will further reduce Plaintiff's award in transcript costs by $3,331.95, which is the court reporter fee for the deposition of Dr. Carnes. Ellis Decl. Costs Ex. 5 at 16, ECF 307. As discussed in greater depth when addressing expert witness fees, it was not reasonable for Plaintiff to retain Dr. Carnes as a testifying expert after she had retained Dr. Glick. Dr. Carnes' testimony was cumulative, and she had never testified as an expert, while Dr. Glick had been allowed to testify in other district courts. The Court excluded Dr. Carnes' testimony because her

report showed that her opinions did not meet *Daubert* standards, and the question was not close. The Court awards Plaintiff $26,841.75 in transcript fees.

### d.   Printing Fees

Plaintiff seeks $801.87 in printing fees. Pl. Mot. Costs 8. She states that this amount covers copying costs for pretrial filings that were delivered to the Court and copies of exhibits that were delivered to the Court and counsel for Defendants. *Id.* (citing Ellis Decl. Costs ¶ 8). Defendants object that the amount is a lump sum, so the Court cannot determine which costs were necessary and which were merely for a party's convenience. Def. Resp. Costs 9. Defendants point out that Plaintiff submitted an invoice that simply states, "Printing Charges" with a lump sum. *Id.* at 10. Mr. Ellis states that the invoice "does not include printing of copies for Plaintiff's counsel." Ellis Decl. Costs ¶ 8. While the invoice is not a model of clarity, the Court accepts counsel's representation of what it includes and does not include. The amount is commensurate with what Plaintiff states it covers. Those costs were necessary. The Court awards Plaintiff $801.87 in printing fees.

### e.   Witness Fees

Plaintiff seeks $3,421.16 in witness fees. Pl. Mot. Costs 6-7. The Court may tax witness fees. 28 U.S.C. § 1920(3). Statutory amounts for per diem attendance, travel, and subsistence may be recovered. *Id.* § 1821. Defendants object to $40 for a trial subpoena fee for Ms. Lund and $6.70 in mileage for the subpoena. Thompson Decl. Costs Ex. 1. They also object to a $40 fee for a trial subpoena for Jill Gelow and $6.57 in mileage for the subpoena. *Id.* For the same reasons discussed in addressing service fees, the Court will allow those costs for Ms. Gelow but not for Ms. Lund.

Defendants also object to the airfare costs for three out-of-state witnesses as excessive.

Def. Resp. Costs 7-8. The statute provides:

> A witness who travels by common carrier shall be paid for the actual expenses of travel on the basis of the means of transportation reasonably utilized and the distance necessarily traveled to and from such witness's residence by the shortest practical route in going to and returning from the place of attendance. Such a witness shall utilize a common carrier at the most economical rate reasonably available. A receipt or other evidence of actual cost shall be furnished.

28 U.S.C. § 1821(c)(1). When the prevailing party fails to show that the witness used a common carrier at the most economical rate, courts in this district have disallowed or reduced the award of airfare costs. *E.g.*, *Peterson v. C.R. Bard, Inc.*, No. 3:19-CV-01701-MO, 2021 WL 4240416, at *2 (D. Or. Sept. 17, 2021) (excluding airfare costs); *Gessele v. Jack in the Box, Inc.*, No. 3:14-CV-01092-HZ, 2024 WL 1619425, at *29 (D. Or. Apr. 14, 2024) (awarding only 50 percent of airfare costs).

Plaintiff seeks $2,687.53 in airfare costs for witnesses Palmina Fava, Maya Sethuraman, and Supriya Mohile. *See* Pl. Mot. Costs 7. She seeks $452.58 in airfare costs for Ms. Fava. Defendants do not object specifically to the costs for Ms. Fava, arguing only that Plaintiff has not shown that the rate was the most economical. Def. Resp. Costs 8. The evidence Plaintiff submitted shows that Ms. Fava flew economy class between Newark, New Jersey, and Portland, Oregon. Ellis Decl. Costs Ex. 7 at 1. She arrived in Portland on April 18, 2024, and departed on April 19, 2024. *Id.* No special charges or upgrades were included. The Court concludes that the airfare for Ms. Fava was economical and should be allowed in full.

Plaintiff seeks $796.33 in airfare costs for Ms. Sethuraman. Defendants object that this cost includes a seat upgrade. Def. Resp. Costs 8. The evidence Plaintiff submitted shows that Ms. Sethuraman flew economy class from Philadelphia, Pennsylvania, to Portland, Oregon, on April 18, 2024, with a layover in Phoenix, Arizona. Ellis Decl. Costs Ex. 7 at 3-4. She departed

Portland on April 19, 2024, and arrived in Philadelphia on April 20, 2024, again with a layover and again flying economy class. *Id.* at 4. She purchased a seat upgrade that cost $21.63. *Id.* at 5. The Court will disallow the amount of the seat upgrade, but finds that the amount is otherwise economical.

Plaintiff seeks $1,438.62 in airfare costs for Ms. Mohile. Defendants object that this cost includes a seat upgrade, and that Ms. Mohile arrived in Portland three days before she took the stand and remained for the entirety of the trial. Def. Resp. 8. The flight itinerary for Ms. Mohile shows that she flew from Rochester, New York, to Portland, Oregon, with a layover, on April 14, 2024, and that she departed Portland on April 25, 2024, again with a layover. Ellis Reply Decl. Costs ¶ 2, Ex. A, ECF 325. The itinerary also shows that she received a preferred zone seat on each flight, though she did fly economy class. *Id.* The cost of Ms. Mohile's flight is high, and the Court agrees with Defendants that Plaintiff has not shown that it is the most economical rate available, particularly given that Ms. Mohile arrived several days before she testified (flying on a weekend) and remained for the entirety of the trial. The cost of the seat upgrade is also unclear. Defendants seek a 50 percent reduction in airfare costs. Def. Resp. Costs 8. The Court concludes that a 30 percent reduction is appropriate and reduces the amount awarded by $431.59 to $1,007.03.

Defendants do not otherwise object to the witness fees claimed. The Court has reviewed the records and concludes that the other witness fees should be taxed. The Court therefore awards Plaintiff $2,921.24 in witness fees.

f.    Exemplification and Copying Fees

Plaintiff seeks $1,825 in exemplification and copying fees. Pl. Mot. Costs 8. She states that this amount covers a $1,600 cost for producing files to play the synchronized video

testimony of witnesses Henrikson, Kirsch, and Strahm, and $225 for creating two demonstrative slides. *Id.* Defendants object to the $1,600 cost, arguing that it is not taxable. Def. Resp. Costs. 7. The Ninth Circuit has held that the cost of editing and synchronizing depositions is not taxable under § 1920. *Kalitta Air LLC v. Cent. Tex. Airborne Sys. Inc.*, 741 F.3d 955, 958 (9th Cir. 2013). The Court therefore disallows those costs, and awards Plaintiff $225 in exemplification and copying fees.

g.      Docket Fees

Plaintiff seeks a docket fee of $20 as provided for by statute. Pl. Mot. 8. Defendants do not object to this cost. The Court awards Plaintiff this cost.

In conclusion, the Court awards Plaintiff $31,289.86 in taxable costs. The Court now turns to Plaintiff's Motion for Attorney Fees.

## II.     Attorney Fees and Non-taxable Costs

Plaintiff seeks $3,139,489.25 in attorney fees,[1] $535 in out-of-pocket expenses, and $312,368.08 in expert witness fees. Pl. Am. Mot. Fees 1, ECF 314; Pl. Reply Fees 11, ECF 326. Defendants object. Def. Resp. Fees, ECF 320.

A.      Standards

When reviewing a motion for attorney fees, the district court must determine what fee is reasonable. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To do so, the court should calculate "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* There is a "strong presumption" that this figure represents a reasonable fee. *Jordan v. Multnomah Cnty.*, 815 F.2d 1258, 1262 (9th Cir. 1987). In rare cases, the district court may need

---

[1] Plaintiff sought $3,112,205 in her Amended Motion, plus $27,284.25 in additional fees for work performed since she filed the Motion.

to adjust the lodestar based on factors not encompassed by the lodestar calculation. *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 & nn.8-9 (9th Cir. 1996), *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997).

      B.     Application

           i.     Hourly Rate

In determining the reasonable hourly rate, the Court determines what a lawyer of comparable skill, experience, and reputation could command in the relevant community. *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). "The prevailing market rate in the community is indicative of a reasonable hourly rate." *Jordan*, 815 F.2d at 1262. "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 U.S. 973, 979 (9th Cir. 2008). Courts in this District usually rely on the most recent Oregon State Bar Economic Survey as a benchmark to determine whether a billing rate is reasonable. *See Anderson v. Ross Island Sand & Gravel Co.*, No. 3:18-CV-00898-SB, 2018 WL 5993581, at *3 (D. Or. Oct. 24, 2018), *findings and recommendation adopted*, No. 3:18-CV-00898-SB, 2018 WL 5985671 (D. Or. Nov. 12, 2018); LR 54-3(a).

           a.     Methodology for Determining Rate

Plaintiff's attorneys request an award of fees based on their current billing rates. Defendants object to counsel seeking their current billing rates for the whole litigation, which lasted about six and a half years. Def. Resp. Fees 3. They propose that the Court calculate a reasonable rate for each year work was done in the case by applying the Oregon State Bar Survey's 75th percentile rates for similarly-experienced attorneys and adjusting for inflation. *Id.* Defendants take their approach from this Court's recent decision in *Gessele*, a case that lasted almost 14 years. 2024 WL 1619425, at *12. The Court took that approach in *Gessele* because the

plaintiffs had made no showing of extraordinary circumstances or special hardships justifying the payment of current rates for the whole course of litigation. *Id.* The Court also noted that counsel went from 10 to 23 years of experience while the case was being litigated. *Id.*

The Ninth Circuit has long held "that district courts have the discretion to compensate prevailing parties for any delay in the receipt of fees by awarding fees at current rather than historic rates in order to adjust for inflation and loss of the use funds." *Gates v. Deukmejian*, 987 F.2d 1392, 1406 (9th Cir. 1992). "A fee award at current rates is intended to compensate prevailing attorneys for lost income they might have received through missed investment opportunities as well as lost interest." *Id.* Faced with a long delay in payment, the district court may either award current rates or apply a prime rate enhancement. *Erhart v. BofI Fed. Bank*, No. 15-CV-02287-BAS-NLS, 2023 WL 6382460, at *13 (S.D. Cal. Sept. 28, 2023). In *Erhart*, a case with a delay of similar length to this case, the district court noted that "a prime rate enhancement could lead to a higher fee award than applying current rates because of compound interest over a seven-year period." *Id.* The *Erhart* court did not apply the prime rate enhancement because the plaintiff did not propose any calculations or provide counsel's historic rates. *Id.* Other district courts in the Ninth Circuit have used current rates to account for delays of five or six years. *Id.* (collecting cases). The Supreme Court has indicated that a showing of hardship to counsel as a result of delay in payment, such as counsel's need to forgo other employment opportunities or borrow funds to pay operating expenses, also supports an award of current rates. *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283 n.6 (1989).

In this case, the delay in payment is between six and seven years, in line with other cases in which counsel has been awarded fees at current rates. Plaintiff points to this delay in support of her request for current rates. Pl. Am. Mot. Fees 2-3. Both Mr. Ellis and Mr. Brischetto have

also made a showing of special hardship. Mr. Ellis, a solo practitioner, did not receive any

compensation during his work on this case. Ellis Reply Decl. Fees ¶ 4, ECF 327. He states that

between January and April 2024, he did not accept phone calls or meetings with prospective

clients and told current clients he "would be essentially unavailable for several months" while he

was preparing for trial in this case. *Id.* Mr. Brischetto, who is also a solo practitioner, states that

he maintained a line of credit to assist with payment of overhead expenses while the case was

pending. Brischetto Reply Decl. ¶ 2, ECF 328. He borrowed from it and incurred interest

expense of approximately $11,877 on the line of credit. *Id.* After the bank changed its practice,

he needed to find over $40,000 to pay down the line of credit in order to maintain it. *Id.* Counsel

have made an adequate showing of special hardship to further support the award of fees at

current rates. In *Gessele*, there was no such showing. And this case lasted only half as long as

*Gessele*, meaning the change in experience bands is less significant (and nonexistent for Mr.

Brischetto). As in *Erhart*, counsel did not provide the Court with proposed calculations for a

prime rate enhancement or request a prime rate enhancement. The Court concludes that awarding

fees at counsel's current rates is appropriate to account for the delay in payment and the other

hardships established.[2] The Court now turns to a determination of what a reasonable hourly rate

is for each of Plaintiff's attorneys.

        b.     Attorney Matthew Ellis

Plaintiff requests an hourly rate of $575 for Mr. Ellis. Pl. Am. Mot. Fees 3. She states that

this is approximately the 75th percentile for lawyers in downtown Portland with 16-20 years of

experience in 2021. *Id.* (citing the 2022 Oregon State Bar survey). She also states that the 75th

---

[2] Plaintiff also argues that the Court must award fees at counsel's current rates under O.R.S. 20.107(2). Pl. Reply Fees 2. The Court need not address this issue of statutory interpretation.

percentile for civil litigation – plaintiff was $552 in 2021. *Id.* She states that a rate of $575 would be around $639 today, adjusted for inflation, but does not request that adjustment. *Id.*

In terms of qualifications. Mr. Ellis has been practicing for about 17 years, primarily in employment law and civil rights matters. Ellis Decl. Fees ¶¶ 4, 8, ECF 313. He co-chaired the Oregon Trial Lawyers Association Employment Section from 2014 to 2018. *Id.* ¶ 5. He served on the Executive Committee of the Civil Rights Section of the Oregon State Bar from 2012 to 2016. *Id.* ¶ 6. He has served on other committees and made presentations on litigation. *Id.* ¶¶ 6-7. Mr. Ellis has had thirteen jury trials. *Id.* ¶ 8.

Defendants object to Mr. Ellis's requested rate as excessive. Def. Resp. Fees 3. They state that the rate is about 23 percent higher than the average hourly rate of $445 for similarly experienced Portland lawyers, according to the most recent Oregon State Bar Survey. *Id.* The 2022 Survey states that the median hourly rate for attorneys in downtown Portland with 16-20 years of experience in 2021 was $425, and the 95th percentile was $683. Oregon State Bar 2022 Economic Survey, Report of Findings at 43, https://www.osbar.org/_docs/resources/ Econsurveys/22EconomicSurvey.pdf. The survey does not report the 75th percentile. To arrive at the rate of $575 per hour, Mr. Ellis states that he used the 50th and 95th percentile bands from the 2022 Survey and split the difference in the rates. Ellis Reply Decl. Fees ¶ 2. However, the figures in the Amended Motion for Fees do not list the correct percentiles for lawyers in downtown Portland with 16-20 years of experience. *See* Pl. Am. Mot. 3. The correct median rate is $425 per hour, and the correct 95th percentile rate is $683 per hour. Applying Mr. Ellis's methodology to those numbers yields a rate of $554 per hour. The Court concludes that the rate of $554 per hour is reasonable for Mr. Ellis given his experience.

c.      Attorney Stephen Brischetto

Plaintiff requests an hourly rate of $685 for Mr. Brischetto. Pl. Am. Mot. Fees 4. She

states that this is less than the 75th percentile rate charged by attorneys with more than 30 years

of experience in downtown Portland. *Id.* Mr. Brischetto has been practicing law since 1977, and

he focuses on civil rights and employment law. Brischetto Fee Decl. ¶ 1, ECF 311. He has been

lead counsel or co-counsel in approximately 48 reported cases. *Id.* ¶ 2. He has tried more than 50

employment cases to a jury verdict. *Id.* ¶ 3. Mr. Brischetto has served on various committees for

the Oregon State Bar and authored publications about employment law practice. *Id.* ¶¶ 4-5.

Defendants object to Mr. Brischetto's requested rate as excessive. Def. Resp. Fees 3. The

2022 Survey shows that the median rate charged by attorneys in downtown Portland with over

30 years of experience was $425, and the 95th percentile was $798. Employing the same

methodology used to calculate Mr. Ellis's rate yields a rate of $612 per hour when rounded to the

nearest dollar. The Court concludes that this rate is reasonable for Mr. Brischetto given his

experience.

ii.      Hours Expended

It is the fee claimant's burden to demonstrate that the number of hours spent on the case

were "reasonably expended" on the litigation and that counsel made "a good faith effort to

exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary[.]"

*Hensley*, 461 U.S. at 434. The degree of success obtained guides the determination of whether

hours were reasonably expended. *Id.* at 436.

Plaintiff seeks to recover 1,144.8 hours of time for Mr. Ellis and 1,350.55 hours of time for Mr. Brischetto.[3] Pl. Am. Mot. Fees 2; Pl. Reply Fees 11. She points to the high volume of work in this case and states that counsel minimized duplication. Pl. Am. Mot. Fees 5. Defendants assert that the hours requested are excessive for several reasons: (1) they include block-billed time; (2) they include duplicative entries; (3) they include unnecessary billing on unsuccessful motions and discovery tactics; (4) they include time spent litigating unsuccessful claims; and (5) they include billing for paralegal or administrative tasks at attorney rates. Def. Resp. Fees 4-7. The Court addresses each category. Where Defendants object to the same time entry for multiple reasons, the Court considered all proper bases for the objection.

a.      Block Billing

The district court has the authority to reduce hours that are block-billed in format. *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007). When the block billing impedes the district court's ability to determine that certain hours were reasonably expended, it is reasonable to reduce those hours. *Id.* Courts in this district have defined block billing as "any time entry of three or more hours either containing four or more tasks, or in the alternative containing two or more tasks, where at least one of the tasks could have taken anywhere from a small to a substantial amount of time." *Ayala v. Cook Fam. Builders LLC*, No. 3:17-CV-266-PK, 2018 WL 1631453, at *4 (D. Or. Mar. 6, 2018) (collecting cases), *findings and recommendation adopted*, No. 3:17-CV-266-PK, 2018 WL 1629863 (D. Or. Apr. 3, 2018). A district court may decrease block-billed entries by a flat percentage, but must explain why the chosen reduction is reasonable. *See Welch*, 480 F.3d at 948. Although some courts in this district have decreased

---

[3] Plaintiff sought 1,126 hours of time for Mr. Ellis and 1,326.5 hours for Mr. Brischetto in her Motion and 18.8 additional hours for Mr. Ellis and 24.05 additional hours for Mr. Brischetto in her Reply.

hours in block-billed entries by 50 percent, one court found that a 25 percent reduction in block-billed entries was more reasonable where the entries did "contain some level of specificity and identify compensable tasks." *Bird v. Oregon Comm'n for the Blind*, No. 3:18-CV-01856-YY, 2021 WL 7709970, at *5 (D. Or. Aug. 11, 2021).

Defendants assert that Plaintiff has around 130 time entries for block-billed periods of three or more hours. Def. Resp. Fees 4; Thompson Decl. Fees Ex. 3, ECF 321. They ask the Court to eliminate block billings that refer to Plaintiff's failed motions and to reduce other block-billed entries lacking specificity by 50 percent. Def. Resp. Fees 4-5. Plaintiff counters that the challenged entries either do not meet the definition of block billing or do not impede the Court's ability to assess the reasonableness of the time spent. Pl. Reply Fees 7-8. She states that many of the entries involve closely related but discretely identified tasks that are properly viewed as a unit. *Id.* (citing *Ayala*, 2018 WL 1631453, at *4).

The Court has reviewed all of the entries in the 17-page spreadsheet Defendants provided for entries they deem block-billed. Thompson Decl. Fees Ex. 3. The Court concludes that the entries do not warrant a reduction based on block billing for the reasons below. Where an entry identified a different basis for a reduction, the Court addressed it in the section of this Opinion covering that basis.

Some of the entries are not block billing because they involve closely related but discretely identified tasks that are properly viewed as a unit. Examples include Mr. Ellis's 3.1 hours spent working on the complaint on 5/15/18, Mr. Brischetto's preparation for the deposition of Dr. Kirsch and conferral with Plaintiff about the deposition on 7/23/21, Mr. Brischetto's 4 hours spent reviewing Defendant Henrikson's deposition and beginning a summary of it on

2/7/24, and Mr. Ellis's 4.3 hours spent on various tasks related to preparing the Bill of Costs on

5/29/24. Thompson Decl. Fees. Ex. 3 at 1, 5, 10, 17. No reduction was made for such entries.

      The majority of the entries are sufficiently detailed that they did not impede the Court's

ability to determine whether the listed hours were reasonable. For example, Mr. Brischetto billed

for 4.5 hours of work on 10/27/20. Thompson Decl. Fees. Ex. 3 at 3. The work performed

included preparing for oral argument, reviewing three depositions, drafting Plaintiff's

declaration, sending emails to Mr. Ellis and Plaintiff, and reviewing discovery to identify

exhibits for the Court. *Id.* The Court believes that 4.5 hours is a reasonable amount of time to

perform those tasks. Mr. Ellis also provided greater explanation for some of his time entries.

Ellis Reply Decl. Fees ¶ 7(b).

      Around one third of the pages in Defendants' 17-page chart cover the pretrial and trial

preparation period. The Court notes that many hours were billed for preparing witness

statements. The witness statements submitted with the pretrial filings were voluminous. During a

call with the Court, Plaintiff's counsel asked if they could write shorter, less specific witness

statements to save time, and Defendants' counsel objected to that proposal. The Court finds the

time spent on witness statements reasonable given the degree of specificity Defendants wanted.

In sum, the Court will not reduce any hours for block billing. However, as discussed below, the

Court will adjust the lodestar to account for excessive hours spent on various tasks generally.

           b.     Duplicative Entries

      Defendants state that Plaintiff's billing includes duplicative work. Def. Resp. Fees 5;

Thompson Decl. Fees Ex. 4. They ask the Court to reduce those hours by 50 percent. *Id.* "The

court may reduce the number of hours awarded because the lawyer performed unnecessarily

duplicative work, but determining whether work is unnecessarily duplicative is no easy task."

*Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008). The Ninth Circuit has held that without a specific explanation, a reduction in duplicative hours may not exceed a "haircut" of 10 percent. *Id.*

> [T]he burden of producing a sufficiently cogent explanation can mostly be placed on the shoulders of the losing parties, who not only have the incentive, but also the knowledge of the case to point out such things as excessive or duplicative billing practices. If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut.

*Id.* at 1116.

Plaintiff responds that Defendants have failed to show that any duplication of effort was unnecessary. Pl. Reply Fees 6. She points out that Defendants fail to explain most of the challenged entries. *Id.* Plaintiff states that several of the challenged entries for which Defendants do provide explanation already have reduced hours, and agrees that one other should be reduced as well. *Id.* at 7. Plaintiff's attorneys state that they have developed work practices to minimize duplication and that some activities required the participation of both counsel. Ellis Reply Decl. Fees ¶ 6; Brischetto Reply Decl. ¶¶ 3-7.

The Court begins with the entry for which Plaintiff agrees the billing should be reduced. Mr. Ellis states that his time entry of 7.3 hours on 3/27/24 should be reduced by 1.5 hours because it was duplicative to bill for his attendance at Mr. Glusman's deposition when Mr. Brischetto conducted the deposition. Ellis Reply Decl. Fees ¶ 6; Thompson Decl. Fees Ex. 4 at 7. The Court will make this reduction.

Defendants identify three other duplicative entries: for Mr. Brischetto's attendance at Ms. Strahm's deposition on 8/4/20, at Ms. Prager's deposition on 1/24/24, and at Ms. Moody's deposition on 1/25/24. Thompson Decl. Fees Ex. 4 at 3, 7. Mr. Brischetto explains that he already made the deductions. Pl. Reply 7; Brischetto Reply Decl. ¶ 5. The billing records show

that Mr. Ellis spent 7 hours deposing Ms. Strahm, but Mr. Brischetto billed only 3 hours that day; the time entry also includes the task of preparing for the deposition of Defendant Cigarroa. Thompson Decl. Fees Ex. 4 at 3. Mr. Brischetto states that he deducted 6 hours of time on 8/4/20. Brischetto Decl. ¶ 10 n.1. No further reduction is needed. Next, Mr. Brischetto did not bill any time for attending Ms. Prager's deposition, which took Mr. Ellis 3.5 hours. Thompson Decl. Fees Ex. 4 at 6-7. He states that he deducted 3.3 hours of time that day. Brischetto Decl. ¶ 10 n.1. Finally, the records show that Mr. Ellis spent 4 hours deposing Ms. Moody, while Mr. Brischetto billed 4.5 hours that day for activities including preparing for and attending the deposition of Mr. North. *Id.* He states that he deducted 2 hours of time on 1/25/24. Brischetto Decl. ¶ 10 n.1. No further reduction is needed. Based on the nature of the other tasks in the time entries, the Court is satisfied that Mr. Brischetto only billed for the non-duplicative work in these time entries.

Defendants' other specific objections are to both counsel's work on objections to one of Judge You's discovery orders and both counsel attending a discovery hearing. Thompson Decl. Fees Ex. 4 at 3-4. Mr. Ellis states that he and Mr. Brischetto worked on different portions of the objections. Ellis Reply Decl. Fees ¶ 6. Mr. Brischetto states that it was necessary for both counsel to attend the hearing because they both drafted part of the objections. Brischetto Reply Decl. ¶ 6. The Court concludes that it was reasonable for counsel to divide the work in the interest of efficiency and to both attend the hearing, and thus will not reduce the hours for these activities.

Defendants do not explain why the other identified entries are unnecessarily duplicative. As the Ninth Circuit stated in *Moreno*, without a clear explanation from Defendants, the amount requested normally should be either granted in full or reduced by no more than 10 percent. 534

F.3d at 1116. The Court will therefore take the following approach: First, it will determine which of the identified entries are duplicative on their face such that no further explanation was needed. Second, for those entries, the Court will determine whether duplication was clearly unnecessary. For clearly unnecessary duplicative work, the Court will reduce the amount of counsel's hours as appropriate. For entries where it is not clear that the work was duplicative or that any duplication was unnecessary, the Court will not reduce the hours.

As a starting point, it was reasonable for Plaintiff to hire two attorneys. This was a big case with many witnesses. Defendants hired a team of several attorneys to represent them. Some level of duplication will be inherent in the process but will not be unnecessary. The Court evaluates whether the duplicative entries discussed below were unnecessary in that context. If an entry Defendants identified is not discussed specifically, then the Court has concluded that it was not clearly duplicative.

Defendants identified duplicative entries by counsel in preparing the complaint on 5/11/18 and 5/15/18. Thompson Decl. Fees Ex. 4 at 1. The Court does not find it unnecessary for both Mr. Ellis and Mr. Brischetto to work on the complaint, especially given that the hours billed are not excessive.

Both Mr. Ellis and Mr. Brischetto worked on editing the mediation statement in January 2019. Thompson Decl. Fees Ex. 4 at 1. Given the importance of mediation, the Court does not find this duplication unnecessary.

Both Mr. Ellis and Mr. Brischetto attended the Rule 26 conference with opposing counsel on 2/28/19. Thompson Decl. Fees Ex. 4 at 1-2. Because counsel belong to different law firms, and given the importance and scope of discovery in this case, it was reasonable for both to attend

the Rule 26 conference. Likewise, it was reasonable for both to attend a long discovery conference call with opposing counsel on 8/2/19. *Id.* at 2.

The time entries counsel list in August and September 2019 relating to review of PHI and development of search terms do not appear to be duplicative based on the descriptions and the amount of time spent on the tasks listed. *See* Thompson Decl. Fees Ex. 4 at 2.

Both Mr. Ellis and Mr. Brischetto attended a discovery call with Judge You on 5/13/20. Thompson Decl. Fees Ex. 4 at 2-3. Given the length of the call, and the number and complexity of discovery issues in this case, it was reasonable for both to attend.

Both Mr. Ellis and Mr. Brischetto met with Plaintiff to prepare for her deposition on 7/26/20. Thompson Decl. Fees Ex. 4 at 3. Mr. Ellis defended the deposition and Mr. Brischetto attended but did not bill for his attendance. The Court concludes that Mr. Brischetto's attendance at the meeting was unnecessarily duplicative. Mr. Brischetto lists two entries on that date that include preparing Plaintiff for her deposition. One entry states that he spent 4 hours meeting with Plaintiff; the other states that he spent 7 hours meeting with Plaintiff and performing other tasks. *Id.* The Court accordingly excludes the 4-hour entry and reduces the other entry by 4 hours.

Both Mr. Ellis and Mr. Brischetto billed for time spent reviewing Dr. Carnes' report, as well as reviewing the final reports of other experts. Thompson Decl. Fees Ex 4 at 4, 6. The Court will exclude some of the other time spent on Dr. Carnes, as discussed below. But it was not unnecessary for both counsel to review expert witness reports. The Court will not reduce the time. Likewise, it was not unnecessarily duplicative for both counsel to review Judge You's Findings and Recommendation on the motions for summary judgment or Defendants' objections to it. *See id.* at 4-5. Both counsel needed to be familiar with these materials.

Both Mr. Ellis and Mr. Brischetto billed for time spent meeting with Plaintiff on 9/15/21 to discuss and prepare evidence in opposition to Defendants' motion for summary judgment. Thompson Decl. Fees Ex. 4 at 4. It was not unnecessarily duplicative for both counsel to attend a meeting that lasted less than 1 hour to obtain evidence from Plaintiff.

Both Mr. Ellis and Mr. Brischetto billed for time spent selecting documents for experts to review and emailing Plaintiff about it in November 2022. Thompson Decl. Fees Ex. 4 at 5. The Court is not convinced that this work was duplicative given the time spent and the number of experts in this case. Some conferral with co-counsel on this issue would also be necessary.

Both Mr. Ellis and Mr. Brischetto billed for attending a scheduling conference on 1/13/23. Thompson Decl. Fees Ex. 4 at 5. Their attendance was duplicative, and it was not necessary for both counsel to attend the scheduling conference. Each billed 0.3 hours of time for attendance. *Id.* The Court will reduce each counsel's fee award by 50 percent as Defendants suggest.

Both Mr. Ellis and Mr. Brischetto billed for a mediation call and speaking with Plaintiff about the call. Thompson Decl. Fees Ex. 4 at 5-6. Their attendance was duplicative, but the Court does not find that it was unnecessary given the importance of mediation.

Both Mr. Ellis and Mr. Brischetto billed for a phone call with Plaintiff about discovery and experts on 3/20/23 and a meeting with Plaintiff on 9/4/23 about experts. Thompson Decl. Fees Ex. 4 at 6. Having both attorneys attend these meetings was duplicative, but the Court does not find it unnecessary. The Court notes that Defendants have identified relatively few calls or meetings with Plaintiff as duplicative. Given the volume of billing entries in this case, the low rate of duplicative attendance at meetings supports counsel's assertion that they worked to minimize duplication. It suggests that both counsel attended only the most significant meetings.

Both Mr. Ellis and Mr. Brischetto billed for time spent preparing for expert depositions on 1/3/24. Thompson Decl. Fees Ex. 4 at 6. This time does appear to be duplicative. However, the time entries of 6.5 hours for Mr. Ellis and 8 hours for Mr. Brischetto include preparing for and attending calls with four experts before depositions. *Id.* The amount of time spent on those tasks is reasonable, with one exception. As discussed in more detail when addressing expert witness fees for Dr. Carnes, it was not reasonable to retain Dr. Carnes as a testifying expert. It is impossible to determine what percentage of the time was spent on Dr. Carnes and what percentage was spent on the other three experts, so the Court assumes roughly equal time spent on each. The Court therefore excludes 2 hours of Mr. Brischetto's time and 1.5 hours of Mr. Ellis's time on 1/3/24 to account for time spent on Dr. Carnes.

Both Mr. Ellis and Mr. Brischetto billed for attending a conferral with opposing counsel for 30 minutes on 2/27/24, the day before a conference with the Court. Thompson Decl. Fees Ex. 4 at 7. This was duplicative, but as it was in connection with a hearing to discuss various pretrial preparation issues, the Court finds that it was not unnecessary for both counsel to attend.

In sum, the Court concludes that most of the hours Defendants identify do not represent unnecessarily duplicative work.

          c.     Time Spent on Unsuccessful Motions and Discovery Tactics

Defendants argue that "Plaintiff also wasted time on unnecessary discovery tactics, including excessive hours spent on motions, informal briefing, and hearings regarding discovery disputes that did not contribute to plaintiff's recovery at trial," and filing objections to some of Judge You's orders that were denied and largely duplicative of Plaintiff's prior briefing. Def. Resp. Fees 5. They also point to Plaintiff's time spent "re-raising discovery and evidentiary issues that were previously resolved by this Court" and her unsuccessful motion to supplement

the record on summary judgment and *Daubert* motions. *Id.* at 5-6. Defendants ask the Court to exclude all time spent on unsuccessful motions and objections to discovery orders and to reduce time spent on unnecessary litigation tactics by 50 percent. *Id.* at 6.

The Ninth Circuit has indicated that a plaintiff can recover fees for time spent on an unsuccessful motion if that motion contributed to the plaintiff's success on the claims on which she prevailed. *See Webb v. Sloan*, 330 F.3d 1158, 1169 (9th Cir. 2003) ("Even though the summary judgment motion failed, work done to prepare the motion on those theories could have contributed to the final result achieved."); *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2016 WL 7230873, at *11 (N.D. Cal. Dec. 14, 2016). Thus, the district court should consider whether the hours expended on the unsuccessful motion were "reasonably spent in pursuit of the litigation." 2016 WL 7230873, at *11 (internal quotations omitted). "Courts have excluded or reduced hours on unsuccessful motions where those motions were not factually or legally related to the claims in the lawsuit." *Id.* "Courts also have excluded or reduced time where the motions were deficient or had no legal basis." *Id.*

Defendants object to time spent revising the complaint. Thompson Decl. Fees Ex. 5 at 1. They have not explained why revisions were unnecessary or improper. The Court will not exclude time for revising the complaint.

Defendants object to time spent on legal arguments that failed, such as whether certain individuals were comparators. *Id.* at 2. The issue of comparators in this case was complicated and difficult to resolve. The Court will not exclude any time for work related to individuals who were ultimately determined not to be comparators.

Defendants object to billing for hours spent preparing and reviewing Dr. Glick's expert report because the report was disregarded at summary judgment. Thompson Decl. Fees Ex. 5 at

6, Ex. 6 at 1. The Court will not reduce the time spent preparing Dr. Glick's report because such work was reasonably spent in pursuit of the litigation even if the report was disregarded at summary judgment. Dr. Glick ultimately testified at trial. Likewise, the Court will not reduce the time spent on Dr. Glick's deposition. *See id.* Ex. 5 at 8. Even though Dr. Glick was only permitted to testify to part of the material in his report, his full deposition was necessary for the parties to fully explore his credentials, methodology, and opinions.

Defendants also object to time spent preparing Dr. Carnes' expert report and work on the direct examination of Dr. Carnes because her testimony was excluded. Thompson Decl. Fees Ex. 5 at 8, 9, Ex. 6 at 1, 17. As elaborated below in resolving Defendants' objections to expert witness fees for Dr. Carnes, it was not reasonable to engage Dr. Carnes as a testifying expert after engaging Dr. Glick. Dr. Carnes' report was cumulative, and she had never testified as an expert, while Dr. Glick's testimony had been accepted by more than one court. It would have been reasonable to consult with Dr. Carnes for a limited period of time. Therefore, the Court will not exclude any time on Mr. Brischetto's short time entries in June 2021 for discussing Dr. Carnes' report or his one-hour conference with Dr. Carnes in September 2023. *See id.* Ex. 6 at 1, Ex. 5 at 8. The Court will exclude Mr. Brischetto's other entries associated with Dr. Carnes, which involved preparing her expert disclosure (1 hour on 10/24/23), attending her deposition (8 hours on 1/9/24), and preparing for a conference with her (2 hours on 4/7/24). *Id.* Ex. 5 at 8-9. On 4/4/24, Mr. Brischetto billed 7 hours for work on Dr. Carnes' direct examination as well as drafting the opening statement and emailing Drs. Glick and Carnes about the opening statement. The Court concludes that one hour of Mr. Brischetto's time from that entry should be excluded for work on the direct examination of Dr. Carnes. In sum, the Court excludes 12 hours of Mr. Brischetto's time associated with Dr. Carnes.

Defendants seek to exclude time spent on a motion to supplement the summary judgment record with the Covington Report because the motion was denied. Thompson Decl. Fees Ex. 5 at 7-8, Ex. 6 at 5-6. The Court declines to exclude these hours because although the motion failed, it was reasonable to file it. Plaintiff ultimately prevailed in part and lost in part on summary judgment, showing that this was a close case. It was reasonable for her to seek to supplement the record with additional evidence that might have supported her claim. *See O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995) (affirming award of fees for time spent on unsuccessful class certification motion because the motion was related to the claims on which the plaintiff prevailed).

Defendants seek to exclude what they term block-billed entries that include time spent on Plaintiff's unsuccessful *Daubert* motions. Thompson Decl. Fees Ex. 5 at 8-9, Ex. 6 at 14. Plaintiff's *Daubert* motions, while generally unsuccessful, did not lack a legal basis. The motions did result in an agreement between the parties that one of Defendants' experts, Ms. Moody, would not opine on the qualifications of one of Plaintiff's experts, Ms. Broten. And because the outcome of the motions determined what expert testimony was admissible at trial, the motions were related to Plaintiff's pursuit of her claims. *C.f. Pierce v. Cnty. of Orange*, 905 F. Supp. 2d 1017, 1032 (C.D. Cal. 2012) (excluding time spent unsuccessfully opposing a motion for sanctions because, among other reasons, the basis of the motion was unrelated to the substance of the claims). The Court rejects Defendants' proposed reduction of these time entries.

Most of Defendants' objections in this category concern discovery. Defendants object to counsel's hours spent sending discovery-related letters and emails to opposing counsel and the Court, litigating three motions to compel, attending discovery hearings and calls with Judge You, filing objections to Judge You's discovery orders, and filing a motion to extend the discovery

deadline. Thompson Decl. Fees Ex. 5 at 1-6. Defendants argue that the time Plaintiff's counsel spent on these discovery matters was excessive, that Plaintiff spent too much time re-raising discovery issues, and that none of the objections to Judge You's discovery orders were successful. Def. Resp. Fees 5. They seek reductions of between 50 and 100 percent in time spent on these discovery matters. Thompson Decl. Fees Ex. 5 at 1-6.

The Court concludes that the hours spent on discovery matters should not be excluded or reduced as much as Defendants request. Discovery in this case was substantial and involved many complicated issues such as who qualified as a comparator. Those complicated issues were the bases of many of the disputes and resulting letters, emails, and motions. While Defendants point to discovery motions that were unsuccessful, they have not identified any motions or objections that were filed in bad faith or legally defective. Both parties took an aggressive approach to discovery disputes. This is not a case where one side alone bears most of the blame for the amount of time spent on discovery, or where discovery was straightforward. *C.f. Servin v. FCA US LLC*, No. 5:20-CV-00647-SB-KK, 2021 WL 4860691, at *2 (C.D. Cal. Aug. 20, 2021) (reducing time spent on discovery in a routine Lemon Law case that relied on boilerplate requests and work counsel had already performed). The Court declines to cut the fee award for discovery disputes to the degree Defendants request. However, as discussed below, the Court does find the time spent on these matters excessive, which supports an adjustment in the lodestar.

### d.    Time Spent on Unsuccessful Claims

Defendants argue that the calculation of hours should exclude time spent pursuing dismissed claims that were unrelated to the claims on which she succeeded. Def. Resp. Fees 6-7. In particular, Defendants state that Plaintiff should not recover time spent on (1) the race-based discrimination and retaliation claims, (2) retaliation claims based on reports of substandard

patient care, and (3) the wrongful discharge claim. *Id.* at 7. They state that to the extent time appears to be billed to both dismissed and non-dismissed claims, such entries should be reduced by at least 30 percent. *Id.*

The Ninth Circuit has explained that hours spent working on unsuccessful claims should not be excluded if the unsuccessful claims are sufficiently related to the successful claims. *See Webb*, 330 F.3d at 1168. "[R]elated claims involve a common core of facts *or* are based on related legal theories." *Id.* In *Webb*, the plaintiff sued based on his arrest and prosecution. *Id.* at 1162. He brought nine claims for relief, including violations of his First, Fourth, and Fourteenth Amendment rights, malicious prosecution, abuse of process, false arrest, intentional infliction of emotional distress, and failure to train. *Id.* at n.3. The Ninth Circuit found his claims related except for one claim alleging that a particular statute violated the First Amendment because it was overbroad. *Id.* at 1169. Thus, the district court could properly exclude hours spent working on that unsuccessful legal theory, but only if the hours could be isolated. *Id.* And in *Granville v. City of Portland*, an employment discrimination case, the plaintiffs succeeded on their race discrimination claims but did not succeed on their claims alleging violations of their First Amendment speech and association rights, gender discrimination, workers' compensation discrimination, and violation of the Americans with Disabilities Act. No. CV 02-1016-HA, 2006 WL 8459251, at *3 (D. Or. Oct. 16, 2006). The district court found that the claims were all related because they arose from the same core facts, and "most of the evidence on which plaintiffs' unsuccessful claims turned also supported and furthered their successful race discrimination claims," so no reduction in hours was necessary. *Id.*

Plaintiff argues that the hours should not be reduced for time spent on unsuccessful claims because all of her claims were based on a "common core of facts." Pl. Am. Mot. Fees 6

(quoting *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986)). The Court agrees

with Plaintiff. As in *Granville*, all of Plaintiff's claims arose from the same core facts, and most

of the evidence that supported her successful gender discrimination claims was also relevant to

her unsuccessful claims.

The Court has reviewed Defendants' proposed reductions. Thompson Decl. Fees Ex. 6.

Most of them are the proposed 30 percent reduction for work on dismissed claims. *See generally*

*id.* That reduction is not appropriate given how closely related Plaintiff's claims were. Most of

the tasks to which Defendants wish to apply the reduction would still need to be performed, with

little to no change, even if Plaintiff had only brought the claims on which she prevailed.

Defendants also raise more specific objections to billing for hours spent on Plaintiff's race

discrimination and retaliation claims and her § 1983 claim against OHSU, all of which were

unsuccessful. *Id.* at 2, 3, 6, 7, 8.[4] Because Plaintiff's failed claims were closely factually related

to her successful claims, a reduction in hours for work on these failed claims is not appropriate.

The other specific objections Defendants raise in their spreadsheet for unsuccessful

claims address billing for unsuccessful motions and administrative tasks, and a discrepancy in

Plaintiff's billing records. The Court will address those objections when resolving those

categories of billing issues. In sum, the Court will not reduce Plaintiff's hours based on her

unsuccessful claims.

        e.     Time Spent on Paralegal and Administrative Tasks

Defendants seek to reduce the hourly rate for time spent on paralegal or administrative

tasks to $175 per hour. Def. Resp. Fees 4 n.1; Thompson Decl. Fees ¶ 11(e), Ex. 7. The Court

---

[4] Defendants also include some of these entries in their spreadsheet for unnecessary motions.
Thompson Decl. Fees Ex. 5 at 1, 6, 7. The entries are properly categorized as work on
unsuccessful claims, but the Court would not exclude them under either basis.

recently applied that rate for paralegal tasks. *Gessele*, 2024 WL 1619425, at *13. Plaintiff argues that there should be no reduction for administrative or paralegal work. Pl. Reply Fees 8. In their declarations, counsel dispute the characterization of most of the identified entries as paralegal work. Ellis Reply Decl. Fees ¶ 8; Brischetto Reply Decl. ¶¶ 14-17.

"Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents." *Precision Seed Cleaners v. Country Mut. Ins. Co.*, 976 F. Supp. 2d 1228, 1251 (D. Or. 2013) (internal quotations omitted). Such tasks should not be billed at the attorney or paralegal rates *Id.*

> It has frequently been recognized in the lower courts that paralegals are capable of carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence. Much such work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal.

*Missouri v. Jenkins by Agyei*, 491 U.S. 274, 288 n.10 (1989).

The Court has reviewed the time entries that Defendants identify as administrative or paralegal work and concludes that some do include paralegal or administrative work. This includes time Mr. Ellis billed for drafting a civil cover sheet and other forms, drafting and sending waivers to Defendants, and finding a witness and sending a subpoena to a process server. *See* Thompson Decl. Fees Ex. 7. It also includes time Mr. Brischetto billed for drafting notices of depositions. *Id.* All of these tasks should be billed at the paralegal rate, not the attorney rate. The Court concludes that based on the entries in this spreadsheet, 2 hours of Mr. Ellis's time and 0.25 hours of Mr. Brischetto's time should be billed at the paralegal rate of $175 per hour.

The other entries in Exhibit 7 that Defendants identify as paralegal or administrative work cover work that may appropriately be billed at the attorney rate. This work includes finalizing the lawsuit, drafting an amended complaint, reviewing documents to ensure accurate redactions, reviewing and selecting documents to use during depositions or send to expert witnesses, preparing documents for production and reviewing Defendants' production, and editing submissions to the Court. *See* Thompson Decl. Fees Ex. 7. While some of these tasks may have been appropriate for a paralegal, they all require a level of judgment about how to present the case, handle evidence, or present argument to the court. When a task falls into the "gray area," the Court will not reduce the hourly billing rate.

In their spreadsheet addressing block billing, Defendants identify another paralegal task. Thompson Decl. Fees Ex. 3 at 5. On 4/21/21, Mr. Brischetto billed 6.5 hours for completing objections to one of Judge You's order and calling and emailing the Court and Mr. Ellis about filing. *Id.* On 4/23/21, Mr. Brischetto billed 3.5 hours for calls and emails with court personnel, Plaintiff, and Mr. Ellis about filing a document under seal and correcting the filing and following up with the court. *Id.* The Court concludes that the calls, emails, and act of filing are paralegal tasks. On the 4/21/21 entry, the Court will award 5 hours at Mr. Brischetto's rate and 1.5 hours at the paralegal rate. On the 4/23/21 entry, the Court will award all 3.5 hours at the paralegal rate.

In their spreadsheet addressing dismissed claims, Defendants identify two other paralegal tasks. Thompson Decl. Fees Ex. 6 at 9, 16. First, on 2/11/24, Mr. Ellis billed 8.5 hours for working on witness statements and filing all pretrial documents. *Id.* at 9. Defendants seek a 50 percent reduction. *Id.* The Court concludes that 0.5 hours should be billed at the paralegal rate for the filing task. Second, on 3/27/24, Mr. Ellis billed 7.30 hours for various tasks, including

creating a pretrial conference notebook. *Id.* at 16. The Court concludes that 0.5 hours of his time should be billed at the paralegal rate for creating the notebook.

In sum, the Court will award 8.25 hours of time at $175 per hour and reduce counsel's hours at their attorney rates as explained above (3 hours for Mr. Ellis, 5.25 hours for Mr. Brischetto). The Court notes that Mr. Ellis did not bill for any of his paralegal's work on the case. Ellis Reply Decl. Fees ¶ 8.

### f.  Billing Discrepancies

Defendants identify one entry by Mr. Ellis dated 3/12/24 that states his work on objections to witnesses was 4 hours in the narrative but bills 9 hours. Thompson Decl. Fees Ex. 6 at 13; Ellis Decl. Fees Ex. 1 at 12. The Court has reviewed the records and concludes that Mr. Ellis's hours for that entry should be 4 hours.

### g.  Fees Accruing After Motion Filing

In her Reply, Plaintiff seeks $16,474.25 for 24.05 hours spent by Mr. Brischetto and $10,810 for 18.8 hours spent by Mr. Ellis after the filing of her Motion. Pl. Reply Fees 11. Counsel attach supplemental logs of hours and tasks. Ellis Reply Decl. Fees ¶ 9, Ex. A; Brischetto Reply Decl. ¶ 24, Ex. E. Most of the hours cover work done to respond to Defendants' objections to the Bill of Costs and Amended Motion for Attorney Fees. "[T]ime devoted to litigating the propriety of the fee award is compensable under the attorneys' fee provision of Title VII." *In re Nucorp Energy, Inc.*, 764 F.2d 655, 660 (9th Cir. 1985) (citing *Manhart v. City of Los Angeles, Department of Water and Power*, 652 F.2d 904, 909 (9th Cir.1981), *vacated on other grounds*, 461 U.S. 951 (1983)). The Court has reviewed the additional entries. The time spent responding to Defendants' objections is reasonable in light of the number and scope of objections. The other time entries cover billable activities and are generally reasonable. The

Court will award counsel fees for these hours at the rates the Court has determined are reasonable, subject to the same adjustment to the lodestar discussed below.

To summarize, the lodestar without any upward or downward adjustments includes 1,133.65 hours awarded to Mr. Ellis at a rate of $554 per hour, and 3 hours at a rate of $175 per hour, for a total of $628,567.10. And it includes 1,323.15 hours awarded to Mr. Brischetto at a rate of $612 per hour, and 5.25 hours at a rate of $175 per hour, for a total of $810,686.55. The total lodestar without further adjustment is $1,439,253.65. The Court next considers Plaintiff's request for a multiplier and Defendants' request for a reduction in the lodestar.

          iii.     Multiplier

Plaintiff seeks an upward adjustment of the lodestar under Oregon law, as she prevailed on one of her state-law claims. Pl. Am. Mot. Fees 7. The Ninth Circuit has held that if state law provides for a positive multiplier, the district court must consider the plaintiff's request for such a multiplier. *Terry v. City of San Diego*, 583 F. App'x 786, 791 (9th Cir. 2014). Oregon law requires courts to consider a contingent fee agreement when determining the amount of attorney fees. *Coulter Prop. Mgmt., Inc. v. James*, 160 Or. App. 390, 394, 981 P.2d 395 (1999). The Oregon Supreme Court has approved a fee multiplier based on the risk of nonpayment in a contingency fee case. *Moro v. State*, 360 Or. 467, 492, 384 P.3d 504 (2016). It has also upheld a multiplier based on "exceptional success" combined with factors such as the difficulty and complexity of the case, the value of interests at stake, and the skill and professional standing of the lawyers. *Strunk v Pub. Empls. Ret. Bd.*, 343 Or. 226, 246, 169 P.3d 1242 (2007).

Plaintiff seeks a multiplier of 2.0. Pl. Am. Mot. Fees 2. She states, "Plaintiff's counsel spent thousands of hours in the case, over 6 years, with the very real prospect of having no recovery." *Id.* at 8. She argues that a multiplier is justified under two possible theories: (1) this

was a contingent fee matter with significant delay in payment, or (2) exceptional success together with other factors. *Id.* She points to the size of the verdict, the number of issues and witnesses in the case, the reliance on social framework testimony, and the skill of opposing counsel. *Id.* at 9.

Defendants counter that no multiplier is warranted. Def. Resp. Fees 8. They point out that many of the factors state law directs a court to consider in deciding whether to apply a multiplier are already accounted for by the lodestar approach. *Id.* (citing *Friends of the Columbia Gorge v. Energy Facility Siting Council*, 367 Or. 258, 267, 477 P.3d 1191 (2020)).[5] Next, Defendants argue that "the legal claims and issues presented in this case were neither novel nor difficult," and that Plaintiff did not provide evidence that she had trouble obtaining qualified counsel. *Id.* at 9. Defendants argue that Plaintiff has only pointed to the normal risk of any contingency case, and that her case is not exceptional. *Id.*

The Court concludes that no multiplier is warranted. The lodestar is presumptively reasonable, and Plaintiff has not shown that it should be upwardly adjusted. First, the Court allowed both Mr. Ellis and Mr. Brischetto to recover fees at fairly high hourly rates, at their current rate for all six years of work. That accounts for factors such as the skill of counsel, the delay in payment, and the risk from contingency fee cases. Second, the high number of hours allowed accounts for factors such as the number of witnesses in the case and the need to argue various legal issues. The lodestar accurately captures the factors Plaintiff relies on in seeking a multiplier.

---

[5] Among the factors the presumptively reasonable lodestar figure takes into account is the contingent nature of the fee agreement. *Morales*, 96 F.3d at 364 n.9 (citing *City of Burlington v. Dague*, 505 U.S. 557, 565-67 (1992)).

Third, the Court does not find that this case represented exceptional success or involved novel theories or unusually difficult legal issues. As the Court discussed above in concluding that Plaintiff was the prevailing party, Plaintiff prevailed on four of her eight claims on a single theory of liability, and recovered slightly over $4 million, most of which covered lost wages and benefits. The size of the verdict is due in large part to the high salary Plaintiff commanded as an electrophysiologist. It represents a more limited recovery than it might appear to be on its face, and it is a fraction of the amount Plaintiff sought at trial. While Plaintiff did achieve success, it was not exceptional.

As Defendants point out, Plaintiff's theory of sex stereotyping is not a novel theory, and the use of social framework evidence is not new, as the Supreme Court recognized both 35 years ago. Def. Resp. Fees 9 n.6 (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 250 (1989)). Plaintiff succeeded on four well-established statutory claims. The Court recognizes that Plaintiff's counsel worked hard on this case for six years and achieved success for their client, but concludes that the lodestar accounts for all of the relevant factors. Thus, a positive multiplier is not justified.

    iv.    Reduction of Lodestar

Defendants seek to reduce the lodestar by 30 percent based on Plaintiff's degree of success. Def. Resp. Fees 7-8. They emphasize that she lost on many of her claims and received an economic damages award that was only about one fourth of what she sought at trial. *Id.* Plaintiff's degree of success, while not exceptional, does not warrant this adjustment, for the reasons discussed above in denying a multiplier and concluding that Plaintiff is the prevailing party.

However, the Court concludes that the lodestar should be reduced by 10 percent because Plaintiff's counsel's hours are too high. "[I]n cases where a voluminous fee application is filed in exercising its billing judgment the district court is not required to set forth an hour-by-hour analysis of the fee request." *Gates*, 987 F.2d at 1399. "[W]hen faced with a massive fee application the district court has the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure as a practical means of trimming the fat from a fee application." *Id.* (internal quotations omitted). In doing a percentage cut, the district court must explain why that cut is reasonable. *Id.* (holding that district court abused its discretion in cutting the lodestar by 10 percent where it adopted the plaintiff's proposal wholesale without independently analyzing the fee petition). The district court may, however, reduce the lodestar by no more than 10 percent "'based on its exercise of discretion and without a more specific explanation.'" *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1203 (9th Cir. 2013) (quoting *Moreno*, 534 F. 3d at 1112).

The present voluminous fee application warrants a modest across-the-board downward adjustment. Between them, counsel's time entries total over 2,400 hours over a period of more than six years. The Court did not make many downward adjustments based on the categories Defendants identified, including block billing and duplicative work. Almost all of the minimal cuts made are exclusions of hours that should not properly have been billed. The Court now focuses on the remaining hours.

Having reviewed the billing records, the Court finds that many time entries reflect too long spent on the tasks billed, even if it was reasonable to perform and bill for those tasks. For example, in July 2020, Mr. Brischetto billed over 16 hours to prepare for and attend the deposition of Dr. Kirsch. Thompson Decl. Fees Ex. 3 at 2. Dr. Kirsch did not supervise or work

with Plaintiff. He did not testify at trial (nor was his video deposition played), underscoring his lack of importance compared to many other witnesses. The amount of time spent on his deposition was excessive. As another example, while the Court did not make Defendant's requested substantial cuts to time spent on discovery matters because it did not conclude that the time billed should be reduced for lack of success on those motions or because it was unreasonable to file the motions, the Court does find that Plaintiff's counsel spent more time than was necessary on many of the discovery issues Defendants identified. Similarly, while it was not unreasonable for Plaintiff to move to supplement the record on summary judgment, the amount of time spent on the motion was excessive. *See id.* Ex. 5 at 7-8 (showing over 30 hours spent on motion). More recently, Mr. Brischetto billed over 3 hours in June 2024 for reviewing a letter from opposing counsel and the protective order and sending emails to Plaintiff. Brischetto Reply Decl. Ex. 1 at 1. This time also appears to be excessive.

These examples are not exhaustive; rather, they illustrate why the Court has concluded that a modest reduction in the lodestar is warranted. A reduction of only 10 percent takes into account entries where a reduction of 20 percent or greater would be appropriate, as in the examples listed above, as well as entries where no reduction is necessary. Because almost all of the specific reductions to hours were an elimination of billing for work that was unnecessary or should not have been billed, this 10 percent reduction applies to tasks that were properly billed and accounts for the slight excessiveness of hours billed. With a 10 percent reduction in the lodestar, the attorney fee award is $1,295,328.29. This amount accounts for all the factors discussed above.

iv.    Expert Witness Fees

Plaintiff seeks $312,368.08 in expert witness fees. Pl. Am. Mot. Fees 9-10. Under Title VII, this Court has the discretion to award Plaintiff a reasonable expert fee as part of the award of attorney fees. 42 U.S.C. § 2000e-5(k).[6] Defendants object to the amounts for some of Plaintiff's expert witnesses as unreasonable. Def. Resp. Fees 10-12. The Court focuses its analysis on those witnesses.

Plaintiff seeks $49,000 in expert witness fees for Dr. Peter Glick, at a rate of $400 per hour. Pl. Am. Mot. Fees 9. This amount includes a $10,000 retainer, $20,000 for 25 hours spent reviewing materials and writing his initial report, $14,000 for time spent revising the report and preparing for testimony, and $5,000 for testifying during trial. Ellis Decl. Fees Ex. 2 at 2. Defendants argue that this fee should be reduced because Dr. Glick's report was not used at summary judgment and his testimony at trial was limited. Def. Resp. Fees 10. They propose a reduction of $10,000. *Id.* Plaintiff responds that Dr. Glick's testimony was necessary and "the case law gave clear support to the admissibility of his opinion applying social science to the facts of the case." Pl. Reply Fees 10. Other district courts have limited the award of expert fees where the expert's testimony was limited by the court. *E.g.*, *Bjornson v. Dave Smith Motors/Frontier Leasing & Sales*, 578 F. Supp. 2d 1269, 1290 (D. Idaho 2008) (reducing expert fees for trial preparation and testimony by 50 percent where the expert was on the stand for under two hours and the court had limited the scope of the testimony). The Court concludes that the fees for Dr.

---

[6] Plaintiff also points to O.R.S. 20.107(1), which provides that in cases of unlawful discrimination, "the court shall award to the prevailing plaintiff attorney and expert witness fees reasonably and necessarily incurred in connection with the discrimination claim." Pl. Am. Mot. Fees 9. O.R.S. 20.107(1) is similar to 42 U.S.C. § 2000e-5(k) in that both require the expert witness fees to be reasonably incurred. The Court's award of expert witness fees is the same under the two statutes.

Glick are unreasonably high in relation to the scope of his testimony and that a reduction of $10,000 is appropriate. The Court awards Plaintiff $39,000 in expert witness fees for Dr. Glick.

Plaintiff seeks $20,020.85 in expert witness fees for Dr. Molly Carnes, at a rate of $500 per hour. Pl. Am. Mot. Fees 10. This primarily covers time spent reviewing case documents, speaking with counsel, and preparing and writing a report. Ellis Decl. Fees. Ex. 2 at 5-6. Defendants argue that because the Court disregarded Dr. Carnes' report and opinions at summary judgment and excluded her testimony at trial, the Court should only award $1,875 in fees for work done before preparing the report for summary judgment. Def. Resp. Fees 10-11. Plaintiff responds that Dr. Carnes' "qualifications were necessary to deal with defense witnesses who claim they did not know of stereotyping or did not believe the complaints against Bala were stereotypical." Pl. Reply Fees 10. She also states that "[Dr.] Carnes had not previously testified at trial as an expert. There was no reason to expect she would not be allowed to testify." *Id.*

As to Plaintiff's first point, Plaintiff has not shown why it was reasonable to engage two testifying experts on the issue of sex stereotyping. Dr. Carnes' opinions were largely overlapping with Dr. Glick's. While Plaintiff points to Dr. Carnes' experience in the medical field as a reason to engage her, Dr. Glick's report and testimony adequately addressed sex stereotyping in the medical field. Plaintiff's second point shows why it was not reasonable to spend an additional $20,000 on a second sex stereotyping witness. Plaintiff retained Dr. Glick in March 2021. Ellis Decl. Fees Ex. 2 at 2. A Plaintiff notes, Dr. Glick's testimony has already been found admissible in other cases. Pl. Reply Fees 10. It was not reasonable or necessary thereafter to engage a second testifying expert on the issue of sex stereotyping who had never testified as an expert. *See* Ellis Decl. Fees Ex. 2 at 5 (Carnes invoice showing that work began in late April 2021). Dr. Carnes' expert opinions as reflected in her report did not meet *Daubert* standards, and the issue

was not a close call. It was not reasonable for Plaintiff to do more than ask Dr. Carnes to review basic case materials and speak with counsel as a consulting, non-testifying expert. Based on a review of Dr. Carnes' billing, the Court concludes that four hours would be sufficient to perform these tasks. In addition, Dr. Carnes' rate of $500 per hour is unreasonably high. The Court concludes that a rate of $400 per hour, consistent with Dr. Glick's rate, is more appropriate. The Court therefore awards Plaintiff $1,600 in expert witness fees for Dr. Carnes.

Plaintiff seeks $132,592.59 in expert witness fees for Mr. David Glusman, at a rate of $700 per hour. Pl. Am. Mot. Fees 10; Ellis Decl. Fees Ex. 2 at 53-63. Defendants argue that this amount is excessive, pointing out that "Mr. Glusman was retained as a rebuttal expert solely to review and rebut Defendants' physician compensation expert's opinions" and that he did most of his work over a two-month period. Def. Resp. Fees 11. They also observe that his billing records include lump sum invoices and billing entries from six other individuals at varying rates, as well as duplicative, redundant, and clerical work. *Id.* Plaintiff responds that "Mr. Glusman's work was highly effective, worth the cost, and there should be no reduction in his fees." Pl. Reply Fees 11. Plaintiff also points to the rates Defendants' expert, Leonard Henzke, charged. *Id.* at 10.

The Court concludes that the fees sought for Mr. Glusman should be reduced. Plaintiff obtained a far lower award for lost future earnings or earning capacity than she sought at trial. Defendants are also correct that Mr. Glusman's billing records are unclear. They include several lump-sum billing statements with no clear explanation of what work was associated with the statements. *See* Ellis Decl. Fees Ex. 2 at 53-55. The time billed in the itemized statements includes thousands of dollars for meetings with other individuals and work performed by these individuals, billed at rates between $475 and $600 per hour. *Id.* at 57-63. The Court has no information about these individuals or their qualifications to determine whether these rates are

reasonable. Some time entries contain no description of the work performed. *See id.* at 61. Others are vague. Others include billing for clerical work such as preparing binders, at the same rates, included in time entries with accounting tasks. The fees for Mr. Glusman are excessive in relation to both the level of success Plaintiff obtained and the amount of work Mr. Glusman performed. Faced with such unclear records, the Court agrees with Defendants that the fees for Mr. Glusman should be reduced. *See* Def. Resp. Fees 11. The Court concludes that a 50 percent reduction in fees is appropriate and therefore awards $66,296.30 in expert witness fees for Mr. Glusman. That amount is commensurate with the work performed and its utility in the case.

Plaintiff seeks $15,390 in expert witness fees for Mr. Scott Hunt, at a rate of $675 per hour. Pl. Am. Mot. Fees 10. Plaintiffs' counsel hired Mr. Hunt to provide his opinion on the reasonableness of their attorney fee request. Hunt Decl., ECF 309. Mr. Hunt states that he spent 22.8 hours reviewing the case file and preparing his declaration. *Id.* at 14. Other courts in this district have awarded fees for expert declarations by attorneys on the reasonableness of a fee request when they are helpful to the court. *E.g.*, *Columbia Riverkeeper v. U.S. Army Corps of Engineers*, No. 3:13-CV-01494-PK, 2015 WL 2095223, at *6 (D. Or. May 5, 2015). This Court previously declined to award fees for an expert declaration on the reasonableness of a fee request where the attorney performed no other work on the case and her declaration was duplicative of other declarations before the Court. *Audubon Soc. of Portland v. U.S. Nat. Res. Conservation Serv.*, No. 03:10-CV-01205-HZ, 2012 WL 4829189, at *2 (D. Or. Oct. 8, 2012), *aff'd sub nom. Audubon Soc'y of Portland v. Nat. Res. Conservation Serv.*, 573 F. App'x 640 (9th Cir. 2014).

Defendants object to the fees for Mr. Hunt in their entirety, stating that his declaration "merely restates the information already included in the motion and supporting declarations,"

and that the time expended and hourly rate are unreasonable. Def. Resp. Fees 11-12. Having reviewed Mr. Hunt's declaration and the other materials submitted in support of Plaintiff's Motion, the Court agrees with Defendants. Mr. Hunt's statements about counsel's credentials and experience are largely duplicative of counsel's own declarations. Further, Mr. Hunt engaged in a lengthy recitation of the procedural history of this case, which with the Court is already familiar. Mr. Hunt's opinions on the interconnectedness of Plaintiff's claims and the result in the case were also unnecessary. In short, the Court concludes that Mr. Hunt's declaration is not a reasonable expense because most of its contents are either redundant of other materials submitted with Plaintiff's Motion or otherwise unhelpful to the Court. The Court therefore declines to award Plaintiff any fees for Mr. Hunt's declaration.

Defendants do not object to the expert witness fees sought for Mr. John Berg ($9,060), Ms. Lisa Broten ($41,846.72), or Ms. Nora Ostrofe ($44,457.92). The Court has reviewed the supporting documentation and concludes that the amounts sought for those three experts are reasonable. In sum, the Court awards Plaintiff $202,260.94 in expert witness fees.

v.    Other Non-Taxable Fees and Costs

Under 42 U.S.C. § 1988, which applies because Plaintiff prevailed on her federal civil rights claims, she is entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client," as long as such expenses are reasonable. *Dang v. Cross*, 422 F.3d 800, 814 (9th Cir. 2005) (internal quotations omitted). Plaintiff seeks to recover $440.10 in delivery costs to send copies of pretrial documents to opposing counsel and the Court, and $94.90 in other copying and PACER charges. Pl. Am. Mot. Fees 10. Defendants do not object to these expenses, and the Court finds that they are reasonable and would normally be charged to a fee-paying client.

Plaintiff also seeks to recover any costs that are disallowed under the Bill of Costs. *Id.* The Court disallowed costs associated with Ms. Lund, costs associated with video transcripts, part of the airfare for three witnesses, and the deposition cost for Dr. Carnes. The Court declines to award the costs for Ms. Lund because they were not reasonable, as deposing Ms. Lund was not likely to result in any admissible testimony. The Court will not award the excessive airfare for witnesses because those costs were not reasonable. And the Court will not award the deposition cost for Dr. Carnes because it was not reasonable to retain her as a testifying expert.

The Court concludes, however, that the costs associated with video transcripts should be awarded under § 1988. While video depositions were not necessary as required to qualify as a taxable cost, it was reasonable for Plaintiff to take video depositions of key defense witnesses and witnesses who were out of state. Another court in this district included video deposition costs in an award of non-taxable costs under § 1988 based on evidence that such costs were generally paid by a fee-paying client. *Cleavenger v. Univ. of Oregon*, No. CV 13-1908-DOC, 2016 WL 1065821, at *14 (D. Or. Mar. 16, 2016). The total amount associated with video depositions is $9,982.50. Thompson Decl. Costs Ex. 1. The Court will reduce that amount by $695 for a synchronized video transcript fee for Dr. Carnes because that fee was not reasonable. The Court therefore awards Plaintiff $9,287.50 in costs associated with video depositions. The Court also awards Plaintiff $1,600 in costs for synchronizing video clips of witnesses Henrikson, Kirsch, and Strahm to play at trial. In sum, the Court awards Plaintiff $11,422.50 in non-taxable costs under § 1988.

//

//

//

**CONCLUSION**

Plaintiff's Bill of Costs [306] is ALLOWED IN PART. The Court directs the clerk to tax costs in the amount of $31,289.86 against Defendants. Plaintiff's Amended Motion for Attorney Fees [314] is GRANTED IN PART. The Court awards Plaintiff $1,295,328.29 in attorney fees, $202,260.94 in expert witness fees, and $11,422.50 in non-taxable costs.

IT IS SO ORDERED.


DATED:_____August 12, 2024___.


_____
MARCO A. HERNÁNDEZ
United States District Judge